## TEXAS EMPLOYERS' INS. ASS'N v. BOUNDS.

### No. 4555.

Court of Civil Appeals of Texas. Beaumont.

Feb. 24, 1949.

Rehearing Denied March 23, 1949.

Collins, Dies, Williams, Garrison & Renfrow, of Lufkin, for appellant.

Allen, Smith & Neal, of Houston, and Dudley Davis, of Center, for appellee.

WALKER, Justice.

This is a workmen's compensation case. Employee is Crandle Bounds. Employer is Haslam Lumber Company. Insurer is Texas Employers' Insurance Association.

Employee filed this suit against Insurer as an appeal from an award of the Industrial Accident Board. The case was tried to a jury, and on the jury's verdict, made in response to Special Issues, the trial court rendered judgment in behalf of employee against insurer for compensation for total and permanent disability, payable in a lump sum. From this judgment, insurer has appealed.

The verdict has not been attacked, nor has any phase or incident of the litigation, other than the trial court's denial of insurer's request that one of the papers introduced in evidence be delivered to the jury upon their retirement, to be considered by them while deliberating upon their verdict. The following matters are relevant to insurer's Points of Error, assigning error to this action of the trial court:

The document which insurer requested be sent out with the jury was a copy of employee's claim for compensation, and the part of this document which insurer want-

ed the jury to consider is the description therein of employee's injury and the way and manner in which the injury occurred. This reads: "Cause of Injury: I was hooking logs behind a loader and when I picked up on tongs behind a stump, I severely injured my back. State part of body injured and nature and extent of injury: Nerves, muscles, bones and tendons of the lower back, resulting in serious and permanent disability."

Under insurer's argument, the significant element of this quotation is the statement of how employee came to be hurt. Insurer construes this as meaning that employee sustained an injury while he was lifting some tongs, and insurer says that this is in flat conflict with employee's testimony of how he was hurt.

This claim was signed by employee, and we agree with insurer that the document in its entirety was introduced in evidence. However, the document was never in the jury's possession, and the only part thereof which was actually read before the jury was the part quoted above.

Employee's testimony of how he came to be injured (no other person testified in his behalf on this issue) may be summarized as follows: At about 2 or 3 o'clock in the afternoon of June 6th (5th?) 1947, employee and several other employees of Haslam Lumber Company were engaged in placing logs upon a motor truck, for removal from the woods. These logs were lifted from the ground by a machine called a loader, and were seized and held during movement by grapnells called tongs. One set of tongs was attached to one end of the log which was to be moved, and another set of tongs was attached to the other end of this log. The two sets of tongs were fastened to a cable which the loader drew in and thus moved the log. Employee said that he attached a set of tongs to a log, but that the log lay behind a stump some 12 or 14 inches high, and when the loader attempted to pull the log over the stump these tongs came loose and dropped the log. After several attempts to move the log in this way had failed, employee said that he put the tongs aside and undertook, by hand and unassisted, to lift one end of the log over the stump, and that while he was thus engaged, he experienced pain in the lower part of his back. This log was about 20 feet long and about as big around as a syrup bucket.

Employee made no complaint of pain at the time, nor later during the day to his fellow employees or to his employer, but he said that when he arrived at his home he was in pain and felt ill, and that his mother massaged his back that night. It was in proof that on the next day he informed the office manager of Haslam Lumber Company that he had hurt his back while at work, and that he procured from her a written order to Dr. Sandifer, referred to as the Company Doctor, for medical treatment. He had an interview with Dr. Sandifer that day, told Dr. Sandifer that he had hurt the lower part of his back while picking up the end of a log, and received treatment for a muscular sprain. Dr. Sandifer put an adhesive plaster on his back, and exposed his back to infra-red rays. Employee had eleven of these heat, or light, treatments, during the period beginning on June 7th, 1947, and ending on June 23rd, 17 days later; and he then procured his foreman to take him to another physician, Dr. Oates, who also put tape on his back and gave him a number of injections (employee said 12; Oates said 8 or 10, and that employee might be right) of a vitamin preparation, apparently making the same diagnosis of muscular sprain as had Dr. Sandifer. Employee exhibited symptoms of pain in the lower back, and told Dr. Oates that he had injured his lower back in lifting a log or pole over a stump, and also told Dr. Oates that this occurred on June 6, 1947, "around noon; after noon." The treatments of these two physicians extended over several weeks, but eventually Dr. Oates discharged employee as able to return to work, and employee did return to work for Haslam Lumber Company, and remained at work, according to him, for four days. He said that this was light work but that it hurt his back, and that he quit it for that reason, at the end of the four days. He said that he had never done any other work for Haslam Lumber Company. However, later on he did work some two or three weeks for a concern which was

laying a pipe line; he said that he quit his job because his employers were about to give him heavier work which he did not feel able to do. He also secured temporary employment as a nightwatchman. This work lasted about six weeks, and apparently was performed at a time between the time employee said that he quit Haslam's employ at the end of the four days and the time employee began work for the pipe line concern. In the meantime, on September 15, 1947, employee was also examined by Dr. Grice, at the instance of employee's attorneys. Employee complained to this physician of pain in the lower part of his back and in his legs. Dr. Grice made various laboratory tests and X-ray photographs of the area of the body about which employee complained, and gave employee a salicylate prescription. He also recommended that employee procure a belt to support his back.

In addition to the foregoing, employee introduced medical proof from Dr. Grice in support of his theory of disability.

Insurer paid employee the sum of $64.80 as compensation, for which credit has been allowed insurer in the judgment.

We note, in passing, that employee's proof of how he came to be injured was made under allegations which are equivalent to the statement quoted from employee's claim. The petition alleges: "On or about the 6th day of June, 1947, while working within the scope of his employment for his employer, Haslam Lumber Company, the Plaintiff sustained severe personal injuries when he was picking up on some tongs while hooking logs behind a loader." This is but a re-arrangement of the language of the claim, without any change of meaning.

Employee said that he never told anyone he hurt himself picking up tongs. He said, in effect, that he told his lawyers that he hurt himself picking up a log, not tongs. Concerning the statement quoted from his claim, he testified:

"Q. When you employed your attorneys —you told them all about this serious accident, didn't you? A. That's right.

"Q. Told them in detail how you got hurt, didn't you? A. That's right.

"Q. Did you tell them that you hurt your back when I picked up on tongs behind a stump?' A. A log.

"Q. You told them a log, is that right? A. I told them I picked up a log.

"Q. Do you have any idea where they could have gotten the information that you hurt your back while picking up a tong? A. I don't know. I told them I was hooking tongs behind this loader.

"Q. Let me ask you this. Did you tell your attorneys that the cause of the injury was 'I was hooking logs behind a loader and when I picked up on tongs behind a stump I severely injured my back'? Did you tell them that? A. I told him I picked up a log.

"Q. Answer my question. Did you tell them then—let me read it again 'I was hooking logs behind a loader and when I picked up on tongs behind a stump I severely injured my back?' A. No, sir.

"Q. You didn't tell them that. Do you have any idea where they got such information? A. I don't know."

Insurer's relevant proof may be summarized as follows: (1) Insurer adduced proof tending to show that employee did not lift a log. Employee testified that his fellow employees, present in the area where he was at work when injured, were Glaze, Copeland, Rash and Henson. Each of these men testified. Each said that he did not see employee lift a log, and at least the three other than Copeland were so placed as to have had an adequate opportunity for observing employee. There was also proof from these men showing that there were ways, other than by hand, of moving the log from behind the stump. Henson said that he did not attempt to move logs by hand, and Glaze said, in effect, that others did not. None of these men remembered any complaint of pain by employee and none of them had noticed any difference in how employee performed his work, on the day that employee said that he was hurt.

(2) Insurer also adduced proof from employee's foreman and from an officer of Haslam Lumber Company that after this suit was filed, employee had informed these two men, at an interview procured by him,

that he wanted to return to work for Haslam, that he never was hurt, that the suit was a fabrication, and that he would accept in discharge of his claims the small sum awarded him by the Industrial Accident Board—if he could avoid paying any part of this sum to his lawyers. The officer said that he guaranteed employee the payment of this sum if employee wanted to go back to work, and both witnesses said that he actually returned to work, for at least one day. This, according to the foreman, was the second time employee had returned to work for Haslam after his claimed injury. Both witnesses denied that they had any written statement for signature by employee on this occasion.

Employee categorically denied that he had made such statements. He said, in effect, that the interview was procured by the other two men, that the other two men attempted to persuade him to testify to such statements on the trial of the case and to execute a writing embodying such statements (prepared and in readiness for his signature), but that he refused to do so. And as stated, he said that he only returned once to Haslam's employment, for four days.

(3) Insurer also adduced medical proof in contradiction of employee's, tending to show no more than a muscular sprain which would have healed within a few weeks after its occurrence.

(4) It was in proof that a set of tongs weighed only some 5 or 6 pounds.

■ Insurer has filed two Points of Error, assigning error to the trial court's denial of insurer's request that the claim for compensation be delivered to the jury for consideration by them while deliberating upon their verdict.

Under these Points, insurer says that the trial court's action violated Rule 281, Texas Rules of Civil Procedure, formerly Art. 2193, R.S.1925. Insurer says that this error was reversible because the quotation made from the claim contradicted employee's testimony of how he came to be hurt, an issue which was material and was disputed. Employee denied that Rule 281 was violated because (as we understand his brief) only a part of the claim was read to the jury, that is, was admitted in proof; but he says further that if error occurred it was harmless to insurer.

We agree with insurer that the entire claim was in proof, and that insurer had a right under Rule 281 to have the jury take the claim with them on their retirement.

■ However, we agree with employee that the trial court's denial of insurer's request did insurer no harm. Insurer has misconstrued the claim. The language of the claim does not mean that employee hurt himself picking up tongs. The terms used were "picking up on tongs"; the claim states: "I was hooking logs behind a loader and when I picked up on tongs behind a stump, I severely injured my back". The implication to be drawn from such language is that employee was trying to move a log by means of the tongs and hurt himself in that way. This implication is fixed and is clearly shown by the proof as a whole. Employee said that he told his lawyer he hurt himself picking up a log, not tongs. This testimony was not contradicted, and with all of the proof before them, the jury could not reasonably have believed that plaintiff had intended to claim injury from lifting nothing but tongs, and thus they could not have treated the claim as contradicting employee's testimony—to the extent argued for by insurer. Our construction, of course, differs from employee's testimony in one particular, namely, the means by which employee lifted the log. The claim states that he lifted it with tongs, while he testified that he put the tongs down and lifted the log by hand. The variation is not of such significance as to justify a reversal. Both claim and testimony trace the injury to the log; and both claim and testimony are in conflict with insurer's theories of the facts.

Regarding harmless error for violating Rule 281, see: Dallas Ry. & Terminal Co. v. Orr, Tex.Sup., 215 S.W.2d 862; Texas Employers' Ins. Association v. Applegate, Tex.Civ.App., 205 S.W.2d 412, page 414, Hn. 3.

These comments require that insurer's Points of Error be overruled. The judgment of the trial court is affirmed.