**MICHALAK et al.**

v.

**DZIERZANOWSKI et al.**

No. 10230.

Court of Civil Appeals of Texas.

Austin.

June 9, 1954.

John, W. Hennessey, Thomas E. Hennessey, Theo Pat Henley, San Antonio, for appellants.

Fred L. Blundell, Tom Gambrell, Lockhart, for appellees.

GRAY, Justice.

This appeal is from a judgment of the district court admitting to probate a will dated July 26, 1935, and denying the probate of a will dated January 24, 1948. The two instruments were separately offered

for probate as the last will of Veronica Dzierzanowski. Appellants were contestants of the former and proponents of the latter. Appellees were the proponents of the former and contestants of the latter.

The judgment was rendered on a jury's findings in answer to special issues. These issues and the jury's answers thereto are:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the deceased, Veronica Dzierzanowski, possessed testamentary capacity, as that term had hereinbefore been defined, at the time of the execution of the instrument dated January 24, 1948, and offered in evidence as her purported last will and testament?

"Answer 'yes' or 'no'     no

"Special Issue No. 2

"Do you find from a preponderance of the evidence that the deceased, Veronica Dzierzanowski, was caused to sign the instrument dated January 24, 1948, purporting to be her last will and testament, through the exercise of undue influence upon her mind and will by Frank and Martha Michalak, or either of them?

"Answer 'yes' or 'no'     yes"

Appellants here present fourteen points. Three are to the effect that the trial court erred in overruling appellants': motion for instructed verdict, objections to special issue two, and motion for judgment non obstante veredicto. Two complain that the jury's answers to the special issues, supra, are not supported by the evidence; four complain that such answers are contrary to the evidence; one complains that the jury was guilty of misconduct in that pleadings were taken into the jury room, and four complain of arguments made by appellees' counsel to the jury.

The testatrix, Veronica Dzierzanowski, died June 3, 1953 at the age of 103 or 105 years. She was a widow (her husband having predeceased her), was possessed of real and personal property in Caldwell County, and was survived by children and grandchildren who are parties here.

On July 26, 1935 the testatrix executed a will whereby she made specific bequests to three of her children and one grandchild and directed that the remainder of her estate be divided into equal shares, and, except as to one daughter Annie, who was given $1, the property was to vest in her children and the children of any deceased child, share and share alike. On January 24, 1948, testatrix executed another will whereby all of her property was devised and bequeathed to her daughter, Martha Michalak.

Each will was signed by the testatrix by making her mark and each was witnessed by two witnesses.

Testatrix was of Polish descent and spoke and understood English to a limited extent only. She had resided in Caldwell County for a long number of years, a part of which time she resided with a son. However for approximately thirteen years next prior to her death she had lived in San Antonio, the later years, with her daughter, Martha Michalak, and her husband, Frank Michalak. She died at this home.

The appellants do not say that in July, 1935, the testatrix was incapacitated to make a will and do not say that the 1935 will was not a valid will when made, but say that it was revoked by the 1948 will.

Mike Bienek testified that he was not related to testatrix but had been her neighbor and was a friend of the family; that prior to her moving to San Antonio he lived a close neighbor to her; that in July, 1948, he went to San Antonio especially to see her; that he went purely on a social call because they had been friends and neighbors for a long time. He said:

"A. I got in there and tried to speak to her, walked up to her, shook hands and I knew she was well up in age more or less around 97 or 98 years. So I thought I would speak pretty loud. I spoke pretty loud. 'I'm glad to see

you, Mrs. Dzierzanowski. How do you feel?' And she just stared at me, didn't say a word for a good while. Then I thought I didn't say it loud enough and I repeated it again louder. I said, 'How do you feel. I'm glad to see you. How are you feeling, Mrs. Dzierzanowski? How are you getting along up here?' She stared at me and didn't give me no answer. So Mr. Frank Michalak was sitting on the right-hand side. He answered my question. He said, 'She is feeling pretty good and eats pretty good, but the only trouble she can't hear.' So I thought there was no more use talking to her. I just sat down and spoke a few words about neighbors and crops; it was close to dinner time and I didn't want to bother them. I told them goodbye and walked out.

"Q. Did she or not any time while you were there, Mrs. Dzierzanowski ever recognize you or show any signs of understanding or anything? A. No.

"Q. And you had lived neighbors with her for many many years? A. Yes.

"Q. You were the closest neighbor, weren't you? A. Yes, lived pretty close together. I knew her for a long time. She was a mighty good woman.

\* \* \* \* \* \*

"Q. Did she give any indication to you of understanding you or recognizing anything that was going on? A. No.

"Q. None whatever? A. No."

John Bienek, a brother of Mike Bienek, testified that he had known testatrix 25 or 30 years; that they had been close neighbors and friends in Caldwell County; that in 1947 he lived in San Antonio and from time to time he would see testatrix; that in August, 1947 he went to see her because she was an old neighbor and friend; that they were alone in a room and said:

"A. Well, first she asked me 'Will you make a will for me?' I said yes.

But she still come 'Will you make a will for me?' I told her yes, ma'm. I studied a little while and I said, 'Did you have a will before?' She said, 'No, I haven't got a will.' I said, 'You mean to tell me you never had a will?' She said, yes. I said, 'Why do you want to change the will?' 'Well,' she said, '—— in Polish (here the witness speaks Polish). That means I want all my children be equally divided.'

"Q. She wanted all her children what? A. Be equally divided.

"Q. Be equally divided? A. Share alike."

He further said that her mind "was off"; that it looked like she had about fifty percent of her mind at that time; that you could tell her one thing and in a few minutes she would change it. He wrote the will as she requested, took it back to her, she signed it by making her mark and he signed it as a witness. If any other witness signed this will he did not know it, and that he left it with Frank Michalak.

Mrs. Martha Dzierzanowski, the wife of testatrix' son John, testified that she lived in San Antonio and had known testatrix for 29 years prior to her death; that she visited her often and that testatrix had lived in her home; that in November 1947, she visited testatrix at the Michalak home and that testatrix just kept on asking her the same questions and that Frank Michalak said:

"No use to talk to her because she is going to tell you the same round and round and round."

She further said she afterwards visited testatrix and that she was always worse; that she visited her in March or April of 1948 and that she was worse and didn't know what she was doing or what was going on; that she visited her up to her death and that her mind was growing worse all of the time. She expressed her opinion that if testatrix signed the will in 1948 she did not know what she was doing because "I know for sure she don't know."

The instrument prepared by John Bienek in 1947 was not offered for probate and no contention is here made that it had the effect of revoking the 1935 will.

In reviewing the evidence we have noticed that evidence favorable to the jury's answer to issue one, supra, and have disregarded evidence adverse to such answer. This being our duty when we consider the sufficiency of the evidence to support that finding. Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248, Er. ref., n. r. e. It may be here said that the evidence was conflicting however it was the province of the jury to resolve the conflicts and they having done so we are bound thereby. Under these facts and circumstances appellants' motion for instructed verdict was properly overruled. 41 B, Tex.Jur. § 190, p. 225. And for that reason appellants' motion for judgment non obstante veredicto was properly overruled. Rule 301, Texas Rules of Civil Procedure.

What we have said is sufficient to show that the jury's answer to issue one is supported by some evidence and is not contrary to the undisputed evidence.

It being established by the jury's answer to issue one, supra, that the testatrix did not possess testamentary capacity to execute the 1948 will then that instrument did not revoke the 1935 will. 44 Tex.Jur., § 101, p. 645.

A will may be avoided on the ground that the testator did not have testamentary capacity to execute it, or on the ground that undue influence was exerted on the testator to the extent that such will results from such influence. However the two terms are separate and distinct and if either is established the will is void. Generally undue influence assumes the existence of testamentary capacity. 44 Tex.Jur., § 22, p. 564. The jury's finding that the testatrix did not have testamentary capacity to execute the 1948 will being supported by the evidence renders it unnecessary for us to consider appellants' objection to the submission of issue two and the evidence in support of its answer.

Appellants complain of jury misconduct in that a pleading was taken into the jury room in violation of Rule 281, Texas Rules of Civil Procedure.

At the time the 1935 will was offered in evidence at the trial there was attached to it the application for its probate previously filed in the county court. This application consisted of one typewritten page and was signed by the applicant and one of appellees' attorneys. When the will was offered in evidence the trial court asked if there were any objections to the will and appellants' counsel replied:

"No objections to the will, but I do object to the pleadings which are attached to it.

"The Court: Sustained. Counsel will detach the pleadings before the will is given to the jury."

At the hearing of the motion for new trial the evidence showed: that the argument was closed by appellants' counsel; that the court's charge to the jury and the wills had been used in the arguments and that they were on the counsel table when the arguments were concluded. There was some conflict in the testimony of the attorneys as to who actually handed the papers to the judge, however he stated into the record:

"* * * in regard to the application for the probate of the 1935 will attached to the will: at the conclusion of the argument and just before the retirement of the jury and under the instructions of the Court, the Court called for the charge which had been used in the argument and the three wills, and Counsel for both sides got up, and who just gathered them up here, the papers, I do not exactly remember, but I do definitely remember that all of you stood up and knew what was given to them; at least, you should have known if you didn't know that that application was still attached to that will—knew that it was going out and no objection was made."

One of the jurors testified and said he did not read and did not hear any other jurors read the application; that the jury considered the charge and did not consider or make any reference to the application attached to the will. The other jurors were not called.

Rule 281, T.R.C.P., in part provides:

"Where part only of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded."

Appellants say that the application was a pleading and that the rule prohibited it being given to the jury. It was not a pleading on which the trial was had, however it should have been detached from the will and not given to the jury. To this extent the rule was violated but this does not necessarily mean that a reversal must follow nor that the violation could not be waived. See McDonald, Texas Civil Practice, Vol. 3, p. 1239.

At the time the will was introduced in evidence appellants' counsel knew the application was attached to it and upon his objection the trial court instructed that it be detached. This was not done. Again counsel was present when the charge and other papers were gathered from the counsel table and handed to the judge for delivery to the jury and were so delivered. Counsel, in his testimony, did not say he did not know the application was attached to the will and was passed to the jury. He said that two days after the verdict he came to Lockhart, filed his motion for new trial

"* * * and called to the attention of the Court the fact that the pleadings were still attached to the 1935 will.

"Q. Were they still attached at that particular time, the will and the pleadings? A. Yes, they were."

Under the record before us reversible error is not presented. Thomasson v. Davis, Tex.Civ.App., 74 S.W.2d 557. Er.

dism. Harris v. Levy, Tex.Civ.App., 217 S.W.2d 154. Further we think that it is not shown that harm resulted to appellants. Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143. In any event we do not think that it can be said that the error "amounted to such a denial of the rights of appellant(s) as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant(s) from making a proper presentation of the case to the appellate court; * * *." Rule 434, Texas Rules of Civil Procedure.

■ Appellants' points complaining of arguments made by appellees' counsel to the jury are here attempted to be supported by the testimony heard by the trial court at the hearing on the motion for new trial. Objections to the arguments were first made in the motion for new trial. There is no record of the arguments as made except the testimony of the attorneys given at the hearing on the motion for new trial. Appellants' attorney testified that appellees' attorney argued to the jury the effect of their answers on the judgment to be rendered in the cause. Appellees' attorney testified he did not so argue. The trial court stated into the record that appellees' attorney did not argue to the jury the effect their answers to the issues would have upon the judgment to be rendered. In this state of the record error is not presented.

■ Other complaints say that appellees' counsel argued to the jury that an attorney, who was present when the 1948 will was made and who was an attorney in the probate proceedings in the county court, and Frank Michalak failed to testify at the trial. As to the latter the evidence shows only that prior to the trial appellants' counsel informed appellees' counsel that he could not be present because of illness. The testimony does not show what statements were contained in the alleged harmful arguments. It does not show that the argument went further than to merely advise the jury that the parties were absent from the trial, and does not show that any

harmful inferences were made by counsel. In this state of the record we are unable to say whether an instruction from the court to the jury would, or would not, have cured the alleged error if an objection had been made to the argument, or to determine whether an objection was or was not necessary. Error is not presented. 3 B Tex.Jur. p. 367, § 909.

The trial court did not, and in this state of the record was hardly called upon to, make any statement into the record relative to these alleged harmful arguments. In the state of the record before us we cannot say that appellees' counsel drew any inferences from the absence of these witnesses that was harmful to appellants.

The judgment of the trial court is affirmed.