**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**J. C. ELLIS, Jr., Appellee.**

**No. 309.**

Court of Civil Appeals of Texas.

Tyler.

Nov. 16, 1967.

Saunders & Caldwell, Gene W. Caldwell, Tyler, for appellant.

Richard W. Fairchild, Nacogdoches, for appellee.

DUNAGAN, Chief Justice.

This is a workmen's compensation suit. The case was tried before a jury. Upon the findings of the jury, the trial court entered a judgment for total and permanent disability for the appellee in the sum of $13,703.39. Appellant duly perfected its appeal from such judgment to this court.

Appellant first contends that: "The trial court erred in failing to grant Appellant's Motion for a Mistrial, made after improper argument of counsel for the Appellee." We overrule this contention.

The argument of which appellant complains, and on which it filed its motion for new trial, was as follows: "And then his wife out there had been sick for two years from childbirth—a young woman and 7 little tots, that he loves, just like you love yours, and he has got the same God given right to love them—and not have paid Doctors and paid lawyers to come in here and—".

At this point, counsel for appellee was interrupted and the sentence was not completed. Counsel for appellant objected on the ground that due to certain stipulations, such argument was improper and requested the court to instruct the jury to disregard it. The court sustained the objection and instructed the jury to "disregard the last argument of Counsel about the financial circumstances of the Plaintiff and his family." Counsel for appellee then pointed out that he had said nothing about the financial circumstances of plaintiff (appellee) and his family, but had said that he had the right to love his family just as the jury loved theirs; and further stated that if he had said anything about finances, he apologized and withdrew it, though he felt he had a right to discuss that under the circumstances of this case, "because that's why he is working."

Counsel for appellant then moved for mistrial for the reason that the argument was so prejudicial that an instruction would not remove it from the jury's mind.

Immediately before the argument objected to and quoted above, counsel for appellee had argued that the defense was that Ellis had been working and therefore was able to work, that he had no income, that the appellant knew it owed him, and if it had paid him, he wouldn't have had to work.

■ We do not consider the argument complained of to be a reference to the financial circumstances of appellee and his family. Evidence was admitted without objection that Ellis was 28 years old and had a wife who had been sick from childbirth for about two years and that he and his wife had seven children. Under the record in this case, we do not view the argument as being improper.

■ However, if it should be considered that the argument was a reference to the financial circumstances of appellee and his family, it still was not improper. As counsel for appellee pointed out at the time, the defense was that because Ellis had done some work since his injury, he was therefore able to work. Ellis had testified without objection that while he did some work after his injury, he was not able to work without suffering, that working or trying to work aggravated his pain. In supporting his wife and children, he had to work. Since appellee had the right to show that he had worked since the injury under the whip of financial necessity, to avoid the inference that he would not have worked if he had not been physically able to do so (Muro v. Houston Fire And Casualty Insurance Co., 310 S.W. 2d 420, Tex.Civ.App., San Antonio, 1958, writ ref., n. r. e. and Bituminous Fire & Marine Insurance Co. v. Jones, 398 S.W.2d 577, 580, Tex.Civ.App., Tyler, 1966, writ ref., n. r. e.), his counsel had the right to argue, on the basis of the evidence admitted

without objection, that appellee had worked since his injury, not because he was able to do so, but because he had to work to support his wife and seven children, whom he loved.

In any event, in the light of the evidence before the jury without objection, the action of the trial court in promptly instructing the jury not to consider the argument objected to, and counsel for appellee withdrawing any reference to the financial circumstances of appellee, if any were contained therein, the argument was not of such nature as was reasonably calculated to cause, nor did it probably cause, the rendition of an improper verdict and judgment. Consolidated Underwriters v. Whittaker, 413 S.W.2d 709, 717, 718 (Tex.Civ. App., Tyler, 1967, writ ref., n. r. e.); Younger Brothers, Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546, 550 (1959); and Royal v. Cameron, 382 S.W.2d 335, 343 (Tex. Civ.App., Tyler, 1964, writ ref., n. r. e.).

Next, appellant contends that the court erred in permitting appellee's counsel to question its witness, Dr. Colquitt, about future medical treatment of the appellee and in failing to grant appellant's motion for mistrial pursuant to the court refusing to allow it to go into the beneficial effects of surgery before the jury.

On re-direct examination, testimony of Dr. Colquitt was elicited, without objection, to the effect that in the future appellee would need medical attention, medicines, and treatment. No inquiry was made as to what treatment would be required.

Later in the trial, after the court had refused to allow appellant to offer before the jury evidence as to the possible beneficial effects of surgery, appellant moved the court to instruct the jury to disregard the testimony as to the necessity for future medical attention as it was beyond the scope of the pleadings and not proper to be considered by the jury in arriving at its verdict. Counsel for appellee agreed that such instruction should be given. Appellant then moved for mistrial on the ground that such

instruction could not remove the prejudice. The trial court denied the motion for mistrial but instructed the jury to disregard the testimony as to the necessity for future medical expenses.

No issue as to future medical was submitted to the jury, nor was recovery for future medical sought in the pleadings. But, since Dr. Colquitt had testified that appellee's physical condition resulting from the injury had required medical attention to the time of the trial, that it had disabled him to work, that it was permanent, and that it would continue to disable him to work in the future, the testimony as to the continuing need for medical attention in the future was admissible, not as a basis of recovery for expenditures therefor, but as a circumstance tending to show that appellee's physical condition, as it had existed to the time of trial, would remain unchanged in the future.

▪ In any event, however, the action of the trial court in instructing the jury not to consider the testimony relative to the need for future medical attention effectively destroyed any likelihood of injury to the appellant, for the testimony was not of such nature that the likelihood of harm could not be removed by instruction not to consider it. Moreover, it added nothing of substantial significance to the testimony of Dr. Colquitt that appellee had been at the time of trial and would in the future continue to be disabled to work as the result of the physical condition caused by the injury. Appellate Procedure in Texas, Chapter 17, Harmless Error, Sec. 17.12(3).

▪ Under the record before us, we do not think the court committed error in excluding testimony offered by appellant as to the beneficial effects of surgery. No reason appears, and appellant gives none, why the offering of testimony as to the necessity of future medical care should operate as a waiver of the general rule regarding the admissibility of evidence as to the beneficial effects of surgery. The rea-

son for the rule excluding such evidence (Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521, 524, 525, 1960) continues to exist in the presence of evidence as to the continuing need for medical attention. 63 Tex.Jur.2d 468, and cases cited.

Moreover, if any waiver was effected by the introduction of the evidence pertaining to the necessity for future medical attentions, the waiver no longer existed after the trial court, on motion of appellant, withdrew the evidence and instructed the jury not to consider it. Appellant's contention is overruled.

The appellant also contends that the court erred in overruling appellant's request that certain exhibits be sent into the jury room.

While the jury was deliberating its verdict, appellant requested the court to send into the jury room Defendant's Exhibits Nos. 1 and 2, which the court refused.

Defendant's Exhibits Nos. 1 and 2 are claims for hospital and medical benefits under a group policy of insurance carried by Tyler Pipe & Foundry on its employees. On the face of these instruments appears: "Statement of Insured" and the "Assignment." Each bears the signature "J. C. Ellis, Jr." Defendant's Exhibit No. 1 is dated December 7, 1964. The "Statement of Insured", as reflected in this exhibit, describes the illness as "fever—chills—sore throat;" Defendant's Exhibit No. 2, which is undated, describes the illness as "tonsillitis".

On the back of each instrument is an "Attending Physician's Statement", which shows to have been signed by E. R. Moser, M. D. Each of these statements reflects the nature of the illness to be acute tonsillitis, not arising out of the patient's (appellee) employment. Each such statement reflects the patient first consulted the doctor for the condition on December 3, 1964.

Dr. E. R. Moser was not called to testify upon the trial of this case nor does the record reflect any attempt to establish that Dr. Moser in fact signed the statement.

Appellee identified the signatures on the face of each exhibit under "Statement of Insured" as being his signatures, but stated that he had not read the instruments.

Appellee testified that Dr. Moser was his family physician and that after his injury he went to Dr. Moser about his back; that Dr. Moser examined his back; that he did not know that he was treated for tonsillitis; that his throat was not hurting him; that he did not know what Dr. Moser treated him for other than for his back—that he went for his back.

Appellee testified further that he hurt his back loading a pipe on or about August 7, 1964, while at his work for Tyler Pipe & Foundry; that he reported his injury promptly to his pusher, Gennie Vickers, who sent him to the foundry dispensary where a nurse put a heat light on his back and gave him some pills and told him to go back to work, which he did; that having meanwhile talked to one of his bosses, Hugh Richardson, Jr., he went back the next day and was given the same treatment and pills; that he went to the dispensary a total of about 8 or 10 times and on each visit was given the same treatment; that on one of such occasions, he saw a company doctor, who did the same thing the nurse had done; that later he was taken in a company car to Dr. P. M. DeCharles, who examined and x-rayed him, gave him a prescription, and told him to lay off work until Monday and then, if he didn't get better, to come back; that he didn't get better and asked Richardson and Vickers for permission to go see Dr. DeCharles but they only sent him back to the dispensary and he had to go where they sent him.

Dr. P. M. DeCharles, a witness for appellant, testified: that he first saw the appellee on August 21, 1964, and Ellis told him he had had some back pain on the 13th or 14th of August, 1964, when he turned to pick up a pipe. He saw the appellee for Tyler Pipe & Foundry. As a

result of his examination, he reached the conclusion that Ellis had a mild back strain from some pulled ligaments and muscles in the low back. He further testified that appellee was in pain and there was no question but that he was hurt at that time. He did not see appellee again until he examined him at the request of appellant on October 24, 1966. On this occasion he found nothing wrong with Ellis and his opinion was that he was fully able to work.

Dr. L. A. Colquitt, a witness for appellee, testified: that he first saw appellee on March 10, 1965. He had seen him 11 times since then, the last time being on October 24, 1966 (the same day he was last examined by Dr. DeCharles). He also saw him twice a day during the 4 days he hospitalized him for a myelogram.

Appellee gave a history on the first visit that he had had a sharp pain in his back on August 27, 1964, while lifting a pipe. He complained of continuous pain in the low back with some radiation into the thighs and legs, with the pain being aggravated to some extent by activity and to some extent relieved by rest. He prescribed a back brace for Ellis on this first visit.

Dr. Colquitt further testified that each time he has seen appellee, he has found substantially the same things he found at first—complaint of pain and muscle spasm in the areas of such complaints. To the present time, appellee has not improved substantially; that appellee's condition is a permanent thing.

He also testified that during the time he had seen appellee, he had not been able to work and make a living free of pain and suffering at any time, nor had he been in such physical condition that he could pass a physical examination for manual labor; that he would not expect appellee to be able to return to hard manual labor in his present condition. He knows of nothing that appellee could do day in and day out to make a living that requires his being on his feet, exerting his body, lifting, climb-ing, straining, stooping, bending, or squatting, without suffering as a result of it.

Upon recall, appellee testified that he did not tell Vickers or Richardson that he hurt his back working on his car. He said he did not hurt his back working on his car. He says he knows nothing about a car.

While appellee was being interrogated by counsel for appellant, concerning Exhibits 1 and 2, he testified that over his signature on Exhibit 1, it appeared therein that he had gone to the Gladewater Municipal Hospital on December 7, 1964, and had seen Dr. Moser for treatment of fever, chills and sore throat, and that over his signature on Exhibit 2, the date of his illness was shown to be December 3, 1964, and that the exhibit showed his illness was tonsillitis.

Defendant's Exhibits 1 and 2 were offered into evidence in their entirety without any limitation whatsoever. It appears from the record that the court permitted counsel to read to the jury only a part of the exhibits without exhibiting them or passing them to the jury, because they were claims for insurance benefits and the trial court had granted a motion in limine excluding any reference to insurance benefits. Under the state of the record, we cannot say the court committed error in refusing to grant appellant's request to send the said exhibits to the jury room.

■ Rule 281 of Texas Rules of Civil Procedure provides that where a part only of a document is read in evidence, the jury may not take the entire document with them unless the part so read to them is detached from that which was excluded. This rule applies to instruments attached or affixed to or constituting a part of writings in evidence. Michalak v. Dzierzanowski, 270 S.W.2d 276 (Tex. Civ.App., Austin, 1954, n. w. h.). Since only parts of Defendant's Exhibits 1 and 2 were read in evidence, and appellant's request was to send said exhibits in toto

to the jury, the trial court correctly refused it.

■ It seems to be the settled law of this state that where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony and in such case it is not the duty of the court nor the party objecting to the same to separate the admissible from the inadmissible. Missouri, K. & T. Ry. Co. of Texas v. Washburn, 184 S.W. 580 (Tex.Civ. App., Austin, 1916, writ ref.); Kincaid v. Chicago, R. I. & G. Ry. Co., 119 S.W.2d 1084 (Tex.Civ.App., Dallas, 1938, writ dism.); Texas General Indemnity Co. v. Scott, 246 S.W.2d 228 (Tex.Civ.App., Amarillo, 1951, reversed on other grounds), 152 Tex. 1, 253 S.W.2d 651. We think this rule of law equally applies where a party requests the court to send to the jury room an instrument in its entirety when only a portion thereof was read to the jury, that is, admitted into evidence before the jury for its consideration. Therefore, to put the trial court in default, it was necessary that appellant select the admissible parts of the exhibits (the parts read to the jury and admitted into evidence) and request that such parts only be sent in to the jury. McCormick & Ray, Texas Law of Evidence, Vol. 1, page 20, Sec. 21.

■ Moreover, if the action of the trial court, in refusing to send the exhibits to the jury, be error, under this record, which we have examined in its entirety, it cannot be said that it amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. The admissible portions of the exhibits (those portions appearing over the signature of appellee) were merely cumulative of undisputed evidence already before the jury, as appellee had admitted to the jury that the exhibits on their faces bore his true signature, that he signed them, and admitted further the material contents of each exhibit. The record does not re-flect what portions of these exhibits were read to the jury, however, it may safely be assumed that only the material and admissible portions thereof were read to the jury. Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862 (1948); Continental Fire & Casualty Ins. Corporation v. Drummond, 220 S.W.2d 922, 928, 929 (Tex. Civ.App., Waco, 1949, writ ref., n. r. e.); Medrano v. City of El Paso, 231 S.W.2d 514 (Tex.Civ.App., El Paso, 1950, n. w. h.); Texas Employers' Ins. Ass'n v. Hale, 242 S.W.2d 796 (Tex.Civ.App., Amarillo, 1951, n. w. h.); Texas Employers' Ins. Ass'n v. Bounds, 218 S.W.2d 496, 499 (Tex.Civ.App., Beaumont, 1949, n. w. h.).

■ Furthermore, the exhibits do not relate to material issues in this case, for they do not reasonably tend to establish that appellee was not suffering any disability as a result of a back injury. If, as the exhibits reflect, appellee signed a claimant's statement for hospital and medical benefits for tonsillitis under a group policy carried by his employer, such does not have any reasonable tendency to establish that he was not suffering also from an injury to his back, nor that he was not also treated for the back trouble, as he testified he was. That appellee had complained of back trouble (as well as tonsillitis) was established by the testimony of his pusher, Vickers, and his foreman, Richardson, and that he actually had a back injury was confirmed by the testimony of appellant's own witness, Dr. DeCharles. The basic controverted issues were whether appellee's back injury was sustained in the course of his employment, and the extent and duration of incapacity resulting therefrom—the exhibits did not bear upon either of these issues. Whether or not the failure of the trial judge to comply with the appellant's motion to send into the jury room the exhibits in question is reversible error is to be tested on the basis of the materiality and the admissibility of such exhibits. Texas Employers Insurance Ass'n v. Applegate, 205 S.W.2d 412, 414 (Tex.Civ.App., 1947, Texarkana, writ ref., n. r. e.). The effect of the ex-

hibits to impeach appellee, if any, was already accomplished by the interrogation of appellee as to the contents thereof and the reading of such parts of the exhibits to the jury. And, finally, such impeachment of appellee, if any, as might result from such exhibits was with reference to a matter which, under this record, was not material, but collateral. McCormick & Ray, Texas Law of Evidence, Vol. 1, page 535.

 Appellant finally contends: (1) "There is no evidence to support the finding of the jury that the disability of the appellee is permanent." and (2) "There is insufficient evidence to support the findings of the jury that the disability of the appellee is permanent."

We have considered all the evidence, that which supports as well as that which is contrary to the verdict and judgment. As we view the record, the evidence is ample to support the verdict and judgment. We have considered all of appellant's points of error. They are overruled.

Finding no reversible error, the trial court's judgment is affirmed.