Thomas E. **PERRY, Jr.,** Appellant,

v.

**TEXAS MUNICIPAL POWER AGENCY,** Appellee.

No. 01–83–0051–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 19, 1984.

Rehearing Denied Feb. 9, 1984.

William D. Perkins, Lufkin, for appellant.

Roy L. Barrett, Naman, Howell, Smith, Lee & Muldrow, Waco, for appellee.

Before LEVY, WARREN and DOYLE, JJ.

OPINION

LEVY, Justice.

This is an appeal from a judgment granted in an eminent domain proceeding. We affirm the trial court's decision.

Appellee, Texas Municipal Power Agency, hereinafter referred to as TMPA, pursuant to authority granted by Article 1435a, Tex.Rev.Civ.Stat.Ann., sought to acquire by eminent domain certain lands owned by Thomas E. Perry, Jr., the appellant. Special Condemnation Commissioners were appointed and in November, 1980, they awarded appellant $98,900.00 for his land. Appellant objected to the award of the Commissioners, and TMPA filed suit in December, 1980, to enforce the acquisition.

TMPA deposited the amount of the award with the registry of the District Court on December 3, 1980, and took possession of appellant's land. Appellant, without prior notice to appellee, withdrew the entire amount of the award approximately 2 weeks after TMPA deposited the funds.

Approximately one year later, appellee filed an application for a temporary injunction, requesting that appellant be required to re-deposit the funds with the registry of the District Court. When TMPA originally filed suit, appellant's parents and his original attorneys in the condemnation proceeding were named as co-defendants. Because appellant's withdrawal of the entire deposit could have prejudiced the rights of the other co-defendants, the temporary injunction was granted: appellant was ordered either to re-deposit all of the funds, or to file with the court written authority from his parents to withdraw the award on their behalf. Appellant was also ordered to re-deposit into the court's registry the sum of $9,850.00, the amount found by the court to represent a valid assigned interest to appellant's former attorneys for legal fees for the initial condemnation proceeding. Appellant complied with the order, re-depositing $9,850.00, and filing a written stipulation from his parents that the withdrawal was done with their approval and consent. No other funds were re-deposited by appellant.

At trial on the merits, the jury was asked to assign values both as to the land which was taken and as to appellant's remaining land, before and after the taking. No issue was submitted as to whether TMPA had the *right* to take the land. The jury found that appellant was entitled to $70,280.20 for his land. In its judgment, the trial court found that appellant had withdrawn more than he was entitled to, and awarded

to TMPA the amount of $28,619.80, plus 9% interest from and after December 15, 1980, the date appellant withdrew the amount of the Commissioner's award.

Appellant argues in his first point of error that the trial court erred, as a matter of law, in holding that TMPA had the right to take his property. Appellant contests the taking on two grounds—first, that the TMPA had no right to take due to his having to return the award, and second, that TMPA failed to prove the necessity for the taking.

■■■ Appellant cites no authority for his position that the taking is not valid because appellant was forced to re-deposit the award. Appellant argues, however, a denial of due process in his requirement of having to pay back the money. Appellant's argument is unpersuasive. The record reveals that the entire award was not deposited back with the court. Indeed, only the portion claimed as a valid assignment to appellant's former attorneys was re-deposited. The landowner who accepts the award from the commissioners in a condemnation proceeding cannot thereafter question the right of the condemnor to take the land. *Coastal Industrial Water Authority v. Celanese Corporation of America*, 592 S.W.2d 597 (Tex.1979); *Luby v. City of Dallas*, 396 S.W.2d 192 (Tex.Civ. App.—Dallas 1965, writ ref'd n.r.e.). In *Coastal Industrial, supra*, a similar condemnation case, the defendant timely filed objections to the award, requesting that the cause be tried in the county court. Later the defendant withdrew the award from the registry of the court, and the Supreme Court held that although it was thereby prevented from litigating the authority's right to take the property, the defendant could continue to litigate the issue of compensation. The rationale of such estoppel was explained in *State v. Jackson*, 388 S.W.2d 924, 925 (Tex.1965), where the court said that the condemnee, upon withdrawing the commissioners' award,

> ... [i]n legal contemplation ... has consented to such taking and will not be permitted to retain his compensation and at the same time assert that the condemning authority had no right to take his property under the eminent domain power.

We therefore find appellant's argument that he has been denied due process to be untenable. The appellant admitted he took the entire $98,900, used it, took the interest that accrued from it, and had the benefit of all the money from December, 1980, to March, 1982. In addition, the appellant admitted the only reason he re-deposited part of the money was that the judge ordered him to do so. The re-depositing of the $9,850 was not a voluntary act by the appellant that could be interpreted as a non-acceptance of the award. Clearly, by taking the award, investing it and accepting the interest, he indicated his intent to keep the money.

We hold that the partial re-deposit of the funds does not affect appellant's waiver of contesting the taking, and that the appellant, having accepted the award, cannot complain of anything more than the amount of the award. *Coastal Industrial Water Authority, supra.*

■■■ The appellant also complains that TMPA failed to prove the necessity of the taking. The trial court recited in its judgment that, in view of appellant's withdrawal of the award, the only questions to be submitted to the jury were those related to the amount of damages to be recovered as a result of the taking. During trial, after a hearing outside the presence of the jury, the trial court held that there was no fact issue raised on the *right to take* presented by the evidence or the pleadings. We agree. An examination of the pleadings reveals that the appellant objected to the award and filed only a general denial. Appellant was asked in interrogatories and requests for admission to disclose the issues which he contended were involved in the case. Appellant was further asked to admit that all jurisdictional prerequisites had been complied with, to which appellant gave only a non-responsive answer, refusing to admit or deny. Appellant was

also asked to admit that the only issue for determination was just compensation, to which a similar non-responsive answer was given. In interrogatories appellant was asked, "If you have not admitted Request No. 5 (that the only issue is just compensation), please list all other issues which you contend are presented for determination herein." Appellant answered "[t]hese Defendants have no knowledge of issues." This answer was never supplemented.

Rule 279, Tex.R.Civ.Pro., states in pertinent part that when

the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence, and ... a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part.

We find that appellant in the instant case, having filed only a general denial, without having affirmatively pleaded the issue of the taking, was precluded from receiving a special issue on that point. We further hold that appellant was estopped, by his responses to requests for admissions and interrogatories, from contesting anything but the amount of damages, and accordingly, appellant's first point of error is overruled.

Appellant argues in his second and third points of error that the trial court erred in excluding from the jury testimony by the appellant concerning the amount of lignite he saw both on his property and on adjoining tracts of land. Appellant argues that he should have been permitted to testify as to the coring done on his land and adjacent lands, and to the amount of lignite he observed from the charts on the cores.

▮ Appellant cites *State of Texas v. F.R. Dehnisch, et al.*, 437 S.W.2d 46 (Tex. Civ.App.—Corpus Christi 1968, no writ), and *Urban Renewal Agency of the City of San Antonio v. Angelina ABDO, et al.*, 562 S.W.2d 872 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.), as authority for allowing his testimony on the lignite.

However, these cases stand primarily for the rule that an owner of real property is competent to testify as to the *market value* of his property. An examination of appellant's excluded testimony reveals that he did not attempt to discuss the market value of his land at that point, but rather sought to testify as to how many holes had been cored on the properties, and to interpret the electric logs run on the cores showing different seams of lignite at different levels. Appellant was permitted at a later point in time to testify before the jury to his opinion of the value of his lands before and after the taking, and to his opinion of the value of his remaining tracts of land which were damaged, in his opinion, from the taking.

The testimony appellant attempted to present was that of a technical nature—that he had seen the coring, had seen the blackish-brown material retrieved from the cores, and had identified it as lignite. Appellant was attempting, in addition, to interpret the data from the electric logs run by a geological logging crew.

Appellant argues that his testimony (to the effect that he could read the logs and recognize the presence of lignite) was sufficient to establish him as competent to testify as to its presence, and that this testimony would be as a lay witness, not as an expert. Appellee's counsel took him on an intensive voir dire, where appellant testified to his background in the field of lignite and coring consisted only of observing geological crews who were doing coring in the area, and that his knowledge of the contents of the logs was derived from information from those crews as they explained to him what the logs meant.

Further testimony by appellant showed that the logs were not run by appellant, but by someone on the logging crew. Appellant had never taken a course in electric logging, or in geology, nor worked in a mine, nor taken a course in mine engineering, nor in the chemical composition of lignite or other coals. He had never worked in a laboratory, nor had he taken part in the chemical analysis of lignite. He was

able to testify that sulphur content is significant in determining the value of lignite, and stated that he knew the sulphur content of the lignite in the cores he observed being drilled, but admitted that he obtained this information only from what other people told him. He demonstrated unfamiliarity with the various readings taken from a log and the significance of each, explaining only that "an electric log is an electric log to me." While he knew that the logging equipment was adjustable, he did not know the scale on which the 16 logs that he saw were run.

▮▮▮ The testimony which was excluded is not of the nature of information with which the average juror would be familiar. The testimony of experts is called for whenever peculiar skill and judgment applied to a particular subject are required in order to explain results or trace them to their causes. *Montgomery Ward & Co. v. Levy*, 136 S.W.2d 663 (Tex.Civ.App.—Fort Worth 1940, writ dism'd, jdgmt. cor.). Most jurors are not familiar with lignite and testimony regarding the identity and the amount of lignite reserves should come from an expert. Expert opinions are admitted in evidence on the theory that the expert, by reason of study, has special knowledge which jurors do not possess, and is therefore better able to draw conclusions from facts. *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966); *Ervin v. Gulf States, Inc.*, 594 S.W.2d 134 (Tex.Civ.App. —Houston [1st Dist.] 1979, writ ref'd n.r. e.).

We recognize that there exists a potential danger in allowing appellant to testify as to the amount of the lignite reserves on the properties. Appellant acknowledged before the jury that one cannot determine what grade the lignite is merely by visual examination. For the appellant to testify further about how much lignite was there, however, could be misleading to the jury, because there was no evidence presented as to its marketability. The jury might have assumed that all of it was marketable, and have awarded more money to appellant based on that testimony alone. We note

that appellant presented no testimony as to whether the lignite present was economically feasible to recover. The appellee points out that the seams could have been so narrow as to preclude their marketability entirely. This sort of information should come only from an expert in order to accurately inform the jury of the actual conditions present. The following is some of the excluded testimony:

A. I didn't say I took a course, I said the operators there that was running the equipment explained to me how the equipment worked and how it functioned.

Q. And they did that there on-site?

A. Right.

Q. And they would, as the holes are being drilled or logged, tell you what the equipment was showing?

A. Right. They had, say, an hour, two hours in between that they wasn't doing anything.

Q. And then when the logging actually started coming out, they would tell you this is what this means and that means?

A. Exactly, right.

Q. And your testimony is based upon what they told you?

A. Exactly, right.

Further:

Q. Do you know the sulphur content of any of the material that you claim is lignite?

A. Yes, I do.

Q. And that you got from reports of other people?

A. That is right.

▮▮▮ Appellee argues that appellant's knowledge and testimony about the alleged presence of lignite on his land was based on what other people told him. Such testimony was offered to prove the truth of the matter asserted—the presence of lignite— and the third parties from whom it was derived, the crew who logged the cores, were not available for cross-examination by the plaintiff. *Biddle v. National Old Line*

*Insurance Company,* 513 S.W.2d 135 (Tex. Civ.App.—Dallas 1974, writ ref'd n.r.e.). As such hearsay does not fall into any of the exceptions, the testimony was properly excluded. Even if portions of appellant's testimony were not based on hearsay, the appellant made no attempt to segregate the admissible testimony from the inadmissible. It is well settled that where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony, and in such case it is not the duty of the court or the party objecting thereto to separate the admissible from the inadmissible. *Powell v. Powell,* 554 S.W.2d 850 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Texas General Indemnity Co. v. Ellis,* 421 S.W.2d 467 (Tex.Civ.App.—Tyler 1967, no writ).

We therefore conclude that the trial court did not err in excluding appellant's testimony.

Appellant argues that he should have been allowed to testify as to what tracts of land adjacent to his had been leased for lignite purposes. An examination of the excluded testimony reveals that he stated that there were tracts of land from one quarter of a mile to 8 miles away from his land which he knew were leased. However, appellant admitted that his knowledge of the leases was based partly on what others had told him, and partly on what he had learned at the County Clerk's office. No attempt was made to segregate the hearsay from possibly admissible testimony and, thus, it was properly excluded. *Powell v. Powell, supra; Texas General, supra.* In addition, none of the testimony related to establishing a market for lignite, only that adjacent lands were leased. No evidence was presented as to whether the leases were profitable or otherwise. The general rule is that the mere presence alone of mineral deposits is not sufficient to allow the introduction of testimony regarding those deposits or their quantity or value. There must usually be some evidence presented by the landowner showing some sort of market, great or small, for the commodity in question before the quantity and price of the commodity or substance may be presented to the jury as a value factor. *Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Company,* 523 S.W.2d 462 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Appellant's proffered testimony did not establish any such market, only that some of the adjoining lands had been leased.

We note that appellant presented no other expert witness to testify as to the cores, or as to the amount of lignite present, besides himself. While appellant takes the position he, himself, was not an expert witness, we hold that the trial court correctly found that appellant's testimony was offered on that basis, and properly excluded his testimony. Before a court may permit evidence from an expert, the judge must be satisfied that the witness has specific qualifications not possessed by the public at large which can aid the jurors in determining an issue before them. *Trick v. Trick,* 587 S.W.2d 771 (Tex.Civ. App.—El Paso 1979, error dism'd).

We find no error in the trial court's actions, and accordingly overrule appellant's second and third points of error.

The trial court's judgment is affirmed.