Mary J. PENNINGTON, Appellant,

v.

John BROCK, M.D., et al., Appellees.

No. A14–92–00127–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 12, 1992.

Rehearing Denied Dec. 3, 1992.

John S. Powell, Friendswood, for appellant.

Glen Van Slyke, David Iler, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from an instructed verdict and final judgment rendered in favor of defendants, John Brock, M.D. and the Harris County Hospital District. Appellant asserts that she made a prima facie showing of medical negligence and unsanitary hospital conditions. We disagree and affirm the trial court's judgment.

On February 24, 1985, Mary Pennington underwent emergency surgery at Ben Taub General Hospital for removal of a small bowel obstruction. Dr. John Brock was the attending physician. The incision around her abdomen was closed with a running # 1 Proline suture. Approximately one month later, Ms. Pennington developed "puss pockets" to one side of her umbilicus. She sought medical attention, and the pustules disappeared. The infection returned in June of 1985, and appellant again sought medical attention. The infection resolved and did not resume until November of 1985. On January 28, 1986, Dr. Randell performed exploratory surgery on Ms. Pennington because her umbilicus was discharging a pus-like substance. Dr. Randell removed a nine inch piece of suture which he called "plastic, non-absolvable suture." A culture revealed that a common bacteria, staphylococcus aureus, caused the infection. Ms. Pennington's infection resolved after the exploratory operation. Ms. Pennington brought suit against Dr. Brock and the Harris County Hospital District for medical malpractice, and against the Hospital District solely for failing to provide a sanitary medical environment. She brings two points of error.

In her first point, appellant claims the trial court erred in instructing a verdict in favor of Dr. Brock and the Harris County Hospital District because she had established a prima facie case of medical negligence. To recover in a medical malpractice case the plaintiff must prove four elements: (1) that the physician had a duty to conform to a certain standard of care; (2) that the physician in question breached the standard of care; (3) that the plaintiff suf-

fered an injury; and (4) that there is a causal connection between that breach of the standard of care and the injury suffered. *Elam v. Yale Clinic*, 783 S.W.2d 638, 642 (Tex.App.—Houston [14th Dist.] 1989, no writ). Both the breach of the standard of care and the proximate cause must be proven by medical testimony. *Wendenburg, M.D. v. Williams*, 784 S.W.2d 705, 706 (Tex.App.—Houston [14th Dist.] 1990, writ denied), citing *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949). In reviewing an instructed verdict, we must determine whether there is any evidence of probative force to support each of the elements the plaintiff must prove. *Upton v. Baylor College of Medicine*, 811 S.W.2d 168, 171 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, "when the evidence offered to prove a vital fact is so weak as to do no more than to create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). A thorough review of the record is in order.

Ms. Pennington testified that she had undergone abdominal surgery prior to the operation by Dr. Brock. She stated that she "never had no problem with anything" before that operation. She testified that after the surgery she developed some "pus-packets," and that a Dr. Gomos, in Ohio, drained the blisters and gave her antibiotics. She went to see Dr. Randell in December or January because she was having "leakage of my stomach—of my belly button." Eventually, Dr. Randell operated and removed a piece of suture. Ms. Pennington testified that she had no more pustules or infections after the suture was taken out. However, the surgery performed by Dr. Brock was the last of four operations in and around Ms. Pennington's umbilicus: in October 1976, Ms. Pennington underwent a partial hysterectomy; in August 1977, she underwent surgery for removal of adhesions resulting from that hysterectomy; and in December 1982, she underwent a complete hysterectomy. All four abdominal surgeries involve suture lines around Ms. Pennington's umbilicus.

Also, Ms. Pennington suffered from diabetes and had a history of recurring infections of the same type of bacteria found in her navel.

Dr. Randell was the plaintiff's sole expert witness. He testified that on January 28, 1986, during exploratory surgery, he found a suture "running right across the bottom end of the umbilicus." He stated that this piece of suture was "lying in the lumen of the umbilicus" and that this meant the suture was "exposed to the outside." The suture was "a piece of greeny-blue, solid suture material of a synthetic nature ... plastic, non-absolvable suture. It was about nine inches long in total length." At trial, plaintiff's counsel asked Dr. Randell: "*if* the hospital has indicated that the suture used by [Dr. Brock] was Proline blue monofilament polypropylene suture non-absorbable, is that what you found?" (emphasis added). He answered, "that is it, yes." However, there is no evidence to show that Dr. Brock ever used "Proline blue monofilament polypropylene suture non-absorbable" on Ms. Pennington. Dr. Randell testified that in his opinion it was a breach of the standard of care to place a suture through both walls of the umbilicus, because a non-absolvable suture should never be exposed to the outside. However, he was never asked and never testified that in his opinion Dr. Brock placed the suture he removed. Dr. Randell was asked on three different occasions what the cause of the infection was. He was first asked:

Now, as a cause of the infection that she had, *do you have an opinion* as to whether or not placing the suture across the umbilicus like this, where it is exposed to the outside, caused infection? (emphasis added).

To that question Dr. Randell answered "Yes." However, he was not asked to give his opinion. He was later asked:

Basically, I want to ask you this, Doctor: Is that consistent with leaving in of the suture, then development of infection, then giving of antibiotics, then going to Dr. Gomos, getting more antibiotics, then solving the problem by lancing the thing,

going through another period here of where it starts to flare up and start to leak again, and then here it is, you have to take the thing out? Now is that all consistent with this suture causing the problem, the infection?

Dr. Randell answered simply "Yes." Finally he was asked:

Dr. Randell, do you have an opinion based on reasonable medical probability as to the cause of the infection that you found along the suture in Mary Pennington?

Dr. Randell answered, "The cause of the infection was the *presence* of the suture itself." The plaintiff presented no other expert witness testimony.

The only other evidence presented by the plaintiff were the medical records of Ben Taub General Hospital from the surgery by Dr. Brock in 1985, and from a prior surgery in August of 1982. The operative report dictated by Dr. Brock indicates that Ms. Pennington's abdomen was closed "with a running # 1 Proline" suture. The 1982 operative report indicates that # 1 Chromic ties and # 1 Vicryl were used.

Appellant asserts that she established her prima facie case. We do not agree for two reasons: (1) plaintiff has failed to show Dr. Brock placed the suture found by Dr. Randell; and (2) the plaintiff has failed to establish a reasonably close causal connection between a breach of the standard of care by Dr. Brock, and the cause of the infection.

■ Appellant would have this court *assume* that the suture removed from plaintiff by Dr. Randell was the same suture used by Dr. Brock. We cannot assume facts that are necessary to the plaintiff's burden of proof, unless those facts are established as a matter of law. Who placed the suture was not established as a matter of law. Dr. Randell never reviewed the records of the hospital where Dr. Brock performed the surgery on Mrs. Pennington. Dr. Randell never reviewed the records of Dr. Brock. Dr. Randell never reviewed the records of any other doctors who had performed operations at or near Ms. Pennington's umbilicus. Dr. Randell was not even aware that Ms. Pennington was treated by Dr. Gomos in March 1985 for an incision and drainage procedure in the area of the umbilicus. Further, Dr. Gomos performed a second incision and drainage procedure in June of 1985. In fact, Dr. Randell's testimony is based solely on his own records of his treatment of Mrs. Pennington.

Dr. Randell never testified that Dr. Brock breached any standard of care. Dr. Randell never reviewed Dr. Brock's operative report from the February 1985 surgery, nor did he ever testify that what he found was a "running # 1 Proline" suture. In fact, he was never asked if what he found was # 1 Proline. The only evidence to show what Dr. Brock used is the hospital report showing # 1 Proline was used. The suture removed by Dr. Randell could not even be introduced into evidence because he testified he "didn't keep it." Dr. Brock was deposed and he was present at trial. However, appellant failed to introduce any deposition testimony and never called Dr. Brock to testify that he used the suture which was recovered from appellant's umbilicus. "Where a party does not attempt to prove a particular fact by a certain person whom he could readily call for that purpose, there is a presumption that it could not be done." *McInnes v. Yamaha Motor Corp.*, U.S.A., 659 S.W.2d 704, 712 (Tex.Civ.App.—Corpus Christi 1983) *aff'd*, 673 S.W.2d 185 (Tex.1984) *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Simply stated, there is no evidence showing that Dr. Brock placed the suture that Dr. Randell removed.

■ Dr. Randell's testimony also failed to establish a causal connection between any breach by Dr. Brock and the infection. He was asked if he has an *opinion* as to whether or not the breach caused the infection. Dr. Randell's answer was simply "yes." A straight reading of the record indicates that Dr. Randell was answering yes, he had an *opinion; however*, he was never asked to state his opinion. Dr. Randell was also asked six or seven questions at one time through a long predicated question. Dr. Randell again answered "yes." When finally asked to give his opinion, Dr.

Randell stated that "the cause of the infection was the *presence* of the suture itself." However, he was never asked and he never testified or gave an opinion as to when or by whom the suture was placed in Mrs. Pennington.

On cross examination, Dr. Randell testified that he had no idea where the bacteria came from and stated "it is very common," and further "it's a standard organism that lives on your and my skin, everybody." He further stated that everyone in the courtroom at the time of the trial probably had this particular bacteria on their skin. Dr. Randell was also asked: "with regard to the staph aureus bacteria that caused her infection, Mrs. Pennington's infection, you don't know where that particular bacteria came from, do you?" Dr. Randell answered "No." Dr. Randell further testified that he subsequently treated Mrs. Pennington for a boil on her thigh, and that boil contained the same staph aureus bacteria that he found in the area of her umbilicus.

■ Dr. Randell did testify that it would be a breach of the standard of care to put a suture through both sides of the umbilicus and expose the suture to the outside. However, Dr. Randell never stated that it was his opinion that the *piercing* of the umbilicus caused the infection, or that in reasonable medical probability Dr. Brock placed the suture. Instead, he testified only that the "presence" of the suture caused the infection. For all we know, the suture still could have caused the infection even if there had been no breach of the standard of care in placing the suture— especially since appellant pled a cause of action against the hospital for failure to keep the suture in a sterile place prior to use.

There is no medical expert testimony that in reasonable medical probability Dr. Brock breached any standard of care, or that such a breach was the proximate cause of Mrs. Pennington's injuries. Because the evidence presented is no more than a scintilla, we find that in legal effect it is no evidence.

In this same point of error, appellant maintains that the Harris County Hospital District should be held liable for the negligence of Dr. Brock under the theory of agency by estoppel. It is unnecessary for this Court to fully address appellant's claim of agency by estoppel because we have failed to find that the appellant made a prima facie case of malpractice against Dr. Brock. It should be noted, however, that even if Dr. Brock could have been held liable, appellant has failed to establish the essential elements of either ostensible agency or agency by estoppel, as established in *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 750 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd, n.r.e.). We overrule the first point of error.

■ In appellant's second point, she contends the trial court erred in directing a verdict in favor of the Harris County Hospital District. She alleges the trial court cut off her bill of error and disallowed further evidence on deficiencies and lack of a safe environment. The rule is mandatory: a trial court must permit a party to make an informal bill of exceptions. *4M Linen and Uniform Supply Co. v. W.P. Ballard and Co.*, 793 S.W.2d 320, 324 (Tex. App.—Houston [1st Dist.] 1990, writ denied). The purpose behind a bill of exceptions is to put the evidence in the record so that the appellate court can determine if the trial court erred in excluding it. *Id.* However, when the record is sufficient to apprise both the trial court and the appellate court of the nature of the evidence expected to be elicited, any error in refusing to allow a bill of exceptions is harmless. *Ledisco Fin. Serv. Inc. v. Viracola*, 533 S.W.2d 951, 959 (Tex.Civ.App.—Texarkana 1976, no writ).

■ In this case, the trial court allowed the plaintiff to present a forty-five minute bill on the issue of unsanitary hospital conditions. The trial court then stopped appellant from taking any more time. The record however is clear, and this Court is well apprised of the nature of the evidence plaintiff wanted to present to the jury. Plaintiff's bill involved the admission of various exhibits, specifically, a "state-

ment of deficiencies and plan of correction." These documents were created by two different entities. One side, the summary of deficiencies, was prepared by the Texas Department of Health and Human Services. That department then sent the documents to Ben Taub General Hospital. The Ben Taub General Hospital Risk Management Department would then complete the second side of the documents, denoted as "plan of correction." In an attempt to establish these documents as a business record, plaintiff's counsel called Ms. Rodriguez of the Risk Management Department. However, she could not lay the proper predicate for those portions of the documents created by the Texas Department of Health and Human Services. When asked, "Is it true, though, that the documents that you keep are ... compiled by persons with personal knowledge of the incidents?" Ms. Rodriguez answered "No." Therefore, the documents are hearsay and do not fall within the business record exception upon which appellant relies. Further, the portion of the document to which Ms. Rodriguez did lay a proper business record foundation is inadmissible under Texas Rule of Evidence 407. Rule 407 provides that evidence of subsequent remedial measures is not admissible to prove negligent or culpable conduct. Further, even if a portion of this document was admissible, appellant made no attempt to segregate the admissible testimony from the inadmissible testimony. It is well settled that where evidence is offered as a whole, only a part of which is admissible, "the Court does not commit error in sustaining an objection to such testimony, and in such case it is not the duty of the Court or the party objecting thereto to separate the admissible from the inadmissible." *Perry v. Texas Mun. Power Agency*, 667 S.W.2d 259, 265 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd, n.r.e.). Finally, even if the document survived the hearsay objection and was not a violation of Rule 407, it would still be inadmissible because it is irrelevant. Appellant presents this Court with a document dated July 2, 1985, noting various deficiencies, one of which is that sutures were stored in an anteroom, a place where special instru-

ments are cleaned after use in the operating room. The plan of correction on the document states that the sutures were removed from this room and stored in a suture area. Nothing in this document indicates that the sutures were unsanitary, or more importantly, that they were unsanitary in February of 1985 when Ms. Pennington had her surgery. Nothing in this document or in Ms. Rodriguez's testimony indicates that Ben Taub General Hospital failed to provide a safe and sanitary environment in February of 1985. Further, the appellant presents no expert testimony on this issue. Dr. Randell testified that he had no opinion concerning the environment provided by Ben Taub. We overrule appellant's second point of error.

We find that there is no evidence to support appellant's claim of medical malpractice and unsanitary hospital conditions, and we affirm the trial court's judgment.

J. CURTISS BROWN, Chief Justice, dissenting.

I believe the evidence set out in the Court's opinion raises a fact question of liability on Dr. Brock.

I would also hold that the "statement of deficiencies and plan of correction" was properly proved and relevant.