14 S.W.3d 855 (2000)
In The Interest of C.B.M., a minor child.
No. 09-98-098 CV.
Court of Appeals of Texas, Beaumont.
Submitted October 14, 1999.
Decided April 20, 2000.
*857 Jack Lawrence, James "Jimmy" Sparks, Beaumont, for appellant.
Sid S. Stover, Seale, Stover, Coffield & Bisbey, Jasper, for appellee.
Before WALKER, C.J., BURGESS and HILL,[1] JJ.

OPINION
JOHN HILL, Justice (Assigned).
Joe Patrick Morgan appeals from the judgment in his voluntary paternity suit that he brought with respect to his child. He contends in seven points of error that: (1) the evidence is factually and legally insufficient to overcome the statutory presumption favoring the standard possession order once his son attained the age of three; (2) the evidence is factually and legally insufficient to support the trial court's finding of good cause to pervasively restrict his constitutionally protected right to the formation of a meaningful relationship with his child; (3) the trial court erred in restricting visitation by failing to put the standard possession order into effect to govern visitation after his son became three years of age, absent a corresponding finding of parental unfitness based upon a threat of harm to the child's welfare; (4) the trial court erred as a matter of law by failing to deduct the amount Morgan paid for health insurance coverage for his son from his net resources before calculating his child support obligation; (5) the trial court erred as a matter of law by failing to review the appellee's available resources in its calculation of his child support obligation; (6) the trial court erred by refusing to grant a bill of exceptions to him on his motion for new trial where the witness's testimony concerned his child-rearing abilities and maturation; and (7) the trial court erred because the evidence was factually and legally insufficient to show that bestowing the mother's surname on the child to the complete exclusion of the father's surname would "perennially be in the child's best interests."
We affirm because: (1) the trial court did not abuse its discretion in diverting from statutory guidelines for possession, in setting the amount of Morgan's child support obligation, or in failing to give the child Morgan's surname; and (2) the trial court did not err by failing to admit evidence at the hearing on Morgan's motion for new trial or by failing to allow a bill of exceptions with respect to such evidence, absent any indication that the evidence was newly discovered evidence or evidence that would strongly show that the original custody order would have a seriously adverse effect on the interest and welfare of the child.
Morgan brought this suit to establish paternity rights with respect to his son. The child was born in December 1996. At the time of trial, the child was slightly more than one year old and is now slightly more than three years of age. After a trial to the court, the court declared Morgan to be the father of the child, appointed Erin Monroe, the child's mother, as sole managing conservator, and appointed Morgan as possessory conservator. Finding that there was good cause for not entering a standard possession order, the court ordered that Morgan would have possession of the child at all times that he and Monroe mutually agreed upon in advance, and that, additionally, he would have visitation in the presence of Monroe for one hour on *858 the first and third Monday of each month from 7:30 p.m. to 8:30 p.m. The order further provided that beginning at age three, Morgan would have possession of the child on the first and third Saturday of each month from 8:00 a.m. to 5:00 p.m. Finally, the order provided that once the child was six, Morgan would have possession of the child on the first, third, and fifth weekends of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m.
Morgan contends in points of error numbers one, two, and three that the trial court abused its discretion by deviating from the statutory guidelines for possession after the age of three, because the deviation was not supported by legally or factually sufficient evidence and because the trial court did not make a finding of parental unfitness based upon a threat of harm to the child's welfare.
Statutory guidelines for possession of a child by a parent named as a possessory conservator are intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator or as the minimum possession for a joint managing conservator. TEX. FAM.CODE ANN. § 153.251(a) (Vernon 1996). The guidelines are designed to apply to a child three years of age or older. Id. § 153.251(d). Where the child is less than three, the court is to render an order appropriate under the circumstances for possession of the child and is to render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order. TEX. FAM.CODE ANN. § 153.254 (Vernon 1996). In the instant case, the trial court's order with respect to visitation at the time of trial, at the time the child turns three, and at the time the child turns six, is more restrictive than the standard possession order.
"We review the trial court's findings of fact, as supported by the evidence in the record, to determine if the trial court abused its discretion in restricting visitation...." G.K. v. K.A., 936 S.W.2d 70, 72 (Tex.App.-Austin 1996, writ denied). A trial court is given wide latitude in determining the best interest of the child in family law matters. See Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982). The trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner or without reference to any guiding principles. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990). We will reverse the trial court's judgment only if it appears from the record as a whole that the trial court has abused its discretion. See Gillespie, 644 S.W.2d at 451.
In a suit affecting the parent-child relationship, there is a rebuttable presumption that the standard possession order is in the best interest of the child and provides reasonable minimum possession of a child for a parent named as possessory conservator. TEX. FAM.CODE ANN. § 153.252 (Vernon 1996). The court's order is to "grant periods of possession of the child as similar as possible to those provided by the standard possession order if the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child, or the year-round school schedule of the child, make the standard order unworkable or inappropriate." TEX. FAM.CODE ANN. § 153.253 (Vernon 1996). In ordering terms of possession other than a standard possession order, the trial court shall be guided by the guidelines established by the standard possession order and may also consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor. TEX. FAM.CODE ANN. § 153.256 (Vernon 1996).
In the final order, the trial court found good cause existed for not entering a standard possession order. In its findings of fact and conclusions of law, the trial court found that possession of the child by *859 Morgan should be restricted because of the age of the child, the history of Morgan, the insufficiency of testimony about Morgan's ability to care for the child, and lack of contact with the child up to the time of trial. Further, the trial court stated in its conclusions of law that good cause existed for not entering a standard possession order, that the rights of Morgan to the child should be limited, and that the limitations imposed were required to protect the best interest of the child.
Evidence was presented at trial showing that Morgan had never worked anywhere for any length of time; that he had some trouble in high school; that he had taken drugs some years ago; and that he had been arrested two years previously for public intoxication. He indicated that he went to Lamar University in Beaumont and stayed there two semesters. The child's mother testified that Morgan did not do anything at the time she was pregnant to indicate a willingness to take responsibility for the child. She further testified that she did not feel that he was a responsible person based upon the things he had done in the past, his past decisions, lifestyle, and friends. She said he has a temper and starts things and then just quits. The mother's father testified that when he visited with Morgan in the hospital about his relationship with his child he asked Morgan to come to his office to talk about it and Morgan never showed up. Morgan testified that he worked during the week, leaving home at 5:30 a.m. and not returning until 7:00 p.m. When asked how he would care for the child during the week, he did not seem to grasp the import of the question and answered that he could work something out. We hold that the trial court did not abuse its discretion in limiting visitation to an amount less than that provided for in the standard possession guidelines.
Relying on TEX. FAM.CODE ANN. §§ 153.191, 153.193 (Vernon 1996), Morgan argues that the trial court may not restrict his right of possession, as was done in the trial court's order, without a showing of endangerment of the welfare of the child. Section 153.191 provides that a trial court is to appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child. Section 153.193 states that the "terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." In this case the trial court met the requirements of these sections when it appointed Morgan possessory conservator of the child and provided for visitation with the child. Morgan asserts that proof of endangerment is also necessary where there is an extreme curtailment of possession rights. He relies on Allison v. Allison, 660 S.W.2d 134 (Tex.App.San Antonio 1983, no writ) and Liddell v. Liddell, 29 S.W.2d 868 (Tex.Civ.App.San Antonio 1930, no writ). We find both to be distinguishable because both cases involved decrees that totally denied a parent access to a child. We can find no basis for Morgan's argument that these cases have any application to the facts of this case with an order of possession such as that before this court.
Even if a trial court's possession order could be so restrictive as to effectively deny access to a child and therefore require a showing of endangerment before it could be entered, we do not find that the trial court's order in this case is so restrictive as to effectively deny Morgan's access to the child, thereby restricting his right as a parent to a relationship with his child. We disagree with his conclusion that a finding of endangerment is necessary to support the trial court's order.
Morgan, apparently relying on the trial court's listing of the child's age as one year of age in support of its order, argues that *860 the trial court was improperly relying on the "tender years" doctrine in restricting his visitation with the child by not following the standard guidelines once the child became three years of age. At the time the trial court entered its order, the child was under three. Consequently, the standard guidelines had no application. See TEX. FAM.CODE ANN. § 153.251(d) (Vernon 1996). We construe the trial court's finding with respect to the child's age as a justification for not following the guidelines at that age. We see nothing in the record to support Morgan's presumption that the trial court was relying on the child's age at three or above in support of a variance from the guidelines at that later time. Morgan argues that the trial court adopted the visitation desired by the child's mother, but, even if that is true, it is no indication that the trial court adopted the "tender years" doctrine in arriving at its possession order.
Morgan insists that the trial court's order violates his right to due process by interfering with his rights as a parent. While a parent's rights are constitutionally protected, we know of no holding that an order of possession such as that here involves such an unjustified interference with that right as to be constitutionally prohibited. As otherwise noted, Morgan's cases relate to instances in which a parent has been totally denied contact with the child.
Morgan also urges that the order is in violation of his rights under the Texas Equal Rights Amendment, TEX. CONST. art. I, § 3a (Vernon 1997). His contention is based upon his presumption that the trial court applied the "tender years" doctrine in arriving at the possession order. We have previously discussed why we conclude that his presumption is without support in the record. We therefore hold that the order does not violate Morgan's rights under the Texas Equal Rights Amendment. We overrule points of error numbers one, two, and three.
Morgan insists in point of error number four that the trial court erred as a matter of law by failing to deduct the amount he pays for his son's health insurance coverage from his net resources before calculating his child support obligation. We also use the abuse of discretion standard in reviewing the amount of child support established by the court. See In Interest of Striegler, 915 S.W.2d 629, 637 (Tex.App.-Amarillo 1996, writ denied). In calculating net resources for the purpose of determining child support liability, the trial court is to deduct expenses for health insurance coverage for the obligor's child from the obligor's resources. TEX. FAM.CODE ANN. § 154.062(d)(5) (Vernon 1996). The trial court ordered Morgan to pay child support in the amount of $318.11 per month, which includes $218.11 in child support plus additional amounts for retroactive child support and medical expenses incurred by the child's mother in connection with the child's birth. It appears that the trial court did not deduct any expenses for health insurance coverage in arriving at a figure for Morgan's net resources. However, Morgan, although testifying at trial that he was providing insurance coverage for the child, did not testify as to the cost of that insurance. Further, he testified that he was agreeable to paying $218.11 in child support. Given the lack of evidence as to the amount Morgan was paying for the insurance, we hold that there would have been no evidence in support of any deduction. Additionally, Morgan waived any such error by his agreement to pay child support in the amount ordered. We overrule point of error number four.
Morgan insists in point of error number five that the trial court erred as a matter of law by failing to review the resources of the child's mother in its calculation of his child support obligation. The trial court may order periodic child support payments in an amount other than that established by the guidelines if the *861 evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines. TEX. FAM.CODE ANN. § 154.123(a) (Vernon 1996). In determining whether the application of the guidelines would be unjust or inappropriate under the circumstances, the court is to consider evidence of all relevant factors, including the amount of the obligee's net resources, including the earning potential of the obligee if the obligee is intentionally unemployed or underemployed. See id. § 154.123(b)(5). The evidence shows that the child's mother was going to school at the time of the hearing and was receiving assistance from her parents. There is no evidence that she has any significant earning potential. Additionally, as we have noted earlier, Morgan testified at trial that he was in agreement with the amount of child support that the trial court ordered. We overrule point of error number five.
Morgan argues in point of error number six that the trial court erred by refusing to grant a bill of exceptions to Morgan on his motion for new trial where the witness's testimony concerned his child rearing abilities and maturity. At the hearing on his motion for new trial, Morgan sought to introduce testimony from his aunt concerning his child-rearing abilities and maturity. The trial court refused to hear the testimony or allow a bill of exceptions. Morgan's motion for new trial contained no allegation concerning newly discovered evidence, and Morgan makes no argument as to why the evidence would constitute newly discovered evidence. At the hearing on the motion, his counsel stated, with respect to the testimony that he wished to present, that Morgan's character had changed in that he had a full-time job, even though he was only working thirty hours per week because he was in college; that he no longer used a lot of profanity; and that he had calmed down. Counsel indicated that Morgan's aunt was present to testify and that she could tell the court about "how he is." He further told the court that the aunt leaves her children with Morgan, who babysits them.
There was undisputed testimony at trial concerning Morgan's employment, his attendance at Lamar University, and the fact that he babysat his nieces. There was also testimony at trial concerning Morgan's emotional state, with respect to his having a temper. Generally speaking, a party may not present any additional evidence upon a motion for new trial, where that evidence is not newly discovered. See Hillert v. Melton, 64 S.W.2d 991, 992 (Tex.Civ.App.-San Antonio 1933, writ ref'd). In such a case, the trial court is not required to hear the evidence. Id.
However, in matters relating to child custody, it can be error to refuse to grant a motion for new trial, even though the evidence is not newly discovered, where there is an extreme case and the evidence is sufficiently strong. See C. v. C., 534 S.W.2d 359, 361-62 (Tex.Civ.App.-Dallas 1976, writ dism'd). However, no abuse of discretion is shown unless the evidence presented in support of the motion, and not offered at the original trial, strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the children, and that presentation of such evidence at another trial would probably change the result. See id. at 362. In this case, the evidence that Morgan sought to present, as represented in his offer of proof, was cumulative of other evidence presented at trial with respect to Morgan's employment, his university attendance, his temperament, and his babysitting duties. There was no suggestion of evidence of a character that would strongly show that the original custody order would have a seriously adverse effect on the interest and welfare of the child; therefore, there was no indication of such evidence that would probably change the result.
In C. v. C., evidence was presented at the motion for new trial hearing that showed the father, who was appointed *862 managing conservator, was a man of violent temper who cruelly and harshly disciplined his children. Id. at 360-62. No evidence of this nature had been introduced at trial. Id. In contrast to the evidence raised at the motion for new trial in C. v. C., the nature of the evidence offered by Morgan in this case does not rise to the level of proof required by the court in C. v. C. for reasons that we have already set forth. We have previously noted that, in general, the trial court is not required to hear such evidence at the motion for new trial hearing where the offer of proof fails to show that it is newly discovered. We would hold that in custody cases the trial court is not required to hear evidence at the hearing on the motion for new trial where the offer of proof indicates that the evidence is not newly discovered and is not evidence of the character outlined in C. v. C. and the line of cases relying upon it. Where the evidence offered by Morgan showed on its face that it was neither newly discovered nor admissible under the exception set forth in C. v. C., there was no need for a bill of exceptions. Even if the trial court erred in not permitting Morgan to make a bill of exceptions, where, as here, the record is sufficient to apprise both the trial court and the appellate court of the nature of the evidence expected to be elicited, any error in refusing to allow a bill of exceptions is harmless. See Pennington v. Brock, 841 S.W.2d 127, 131 (Tex.App.-Houston [14th Dist.] 1992, no writ). We overrule point of error six.
Morgan asserts in point of error number seven that the trial court erred because the evidence was factually and legally insufficient to show that bestowing the mother's surname on the child to the complete exclusion of the father's surname would "perennially" be in the child's best interest. We again apply the abuse of discretion standard. See G.K., 936 S.W.2d at 72. Morgan testified that it would be in the child's best interest to have his surname because the child was his son. Monroe testified that she gave the child her surname because she was more responsible for the child than Morgan was at the time. She said that since the name was already the child's established name, she did not see why it would not be in his best interest to keep the name he already had. She said that all of her family had taken care of the child for the first year of his life and that he is a part of her family. Her father expressed his opinion that it would be in the child's best interest to keep the Monroe surname. We hold that the trial court did not abuse its discretion by failing to change the child's name to Morgan. See id. at 73. We overrule point of error number seven.
The trial court's "Final Order in Suit To Establish Parentage" is AFFIRMED.
BURGESS, Justice, concurring and dissenting.
I ambivalently concur in points of error two, three, four and five. I vigorously dissent to points of error one and six. This is one of the rare occasions when this court is confronted with an injustice, then turns a deaf ear. Mr. Morgan filed his petition to establish his paternity when the child was less than a year old. Between the child's birth and the hearing, Mr. Morgan had been allowed to see his son only twice, and had been denied other visitations by the mother. Mr. Morgan was agreeable to paying the amount of child support calculated by Ms. Monroe's attorney; agreeable to paying an additional $50 per month for one-half of the outstanding medical bills, was agreeable to having the child support paid through employer withholding and agreeable to keeping the child insured and providing proof of insurance. What did Mr. Morgan get for his initiative and co-operation? He got the generous visitation of TWO HOURS PER MONTH (in the presence of Ms. Monroe), until the child turned three years old. This amounted to virtually no visitation for the *863 first three years of the child's life.[1] After age three, he gets TWO SATURDAYS PER MONTH; no overnight; no holidays. But at age six, he gets "standard weekend visitation",[2] but no holidays, birthdays, or summer visitation.
My disagreement with the majority concerns (1) the quantum of evidence required to overcome the statutory presumption favoring the standard possession order once the child attained the age of three; (2) the trial court's refusal to grant a bill of exceptions on the motion for new trial and subsequent failure to grant a new trial on the issue of possession and (3) the trial court's failure to change the name of the child from the mother's surname to the father's surname.
Our standard of review is whether the trial judge abused his discretion in setting the access or visitation. Based upon the scarcity of evidence, I believe he did, both procedurally and substantively. As the majority notes, the trial judge listed several factors why Mr. Morgan's visitation should be restricted: the age of the child, the history of Mr. Morgan, the insufficiency of testimony about Mr. Morgan's ability to care for the child and the lack of contact with the child up to the time of trial. We are not without legislative direction on the issue of access and possession. In fact the legislature has stated:
It is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child.[3]
In addition, there is a rebuttable presumption that the standard possession order provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and is in the best interest of the child.[4] Furthermore, if the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child, or the year-round school schedule of the child, make the standard order unworkable or inappropriate, then the court shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order.[5] When the child is less than three years of age, the court shall render an order appropriate under the circumstances for possession. The court shall render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order.[6] Even when ordering the terms of possession of a child under an order other than a standard possession order, the court shall be guided by the guidelines established by the standard possession order and may consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor.[7]
I believe the trial court abused its discretion procedurally when it abrogated its responsibility and established visitation using the verbatim terms as proposed in a letter from Ms. Monroe's counsel to Mr. Morgan's counsel some two weeks prior to the hearing. This letter proposed visitation terms acceptable to the Monroe family; it can fairly be described as "settlement negotiations." Even if, after hearing evidence, the trial judge felt there were *864 sufficient facts to overcome the statutory presumption, the court was to be guided by the guidelines established by the standard possession order and was required to render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order. Obviously the trial court was guided by the desires of Ms. Monroe and her attorney. This was an abuse of discretion.
In that same vein, the order entered was substantively defective. Remember the factors used by the trial judge in fashioning the non-standard possession order: the age of the child, the history of Mr. Morgan, the insufficiency of testimony about Mr. Morgan's ability to care for the child and the lack of contact with the child up to the time of trial. Taking them in reverse order we begin with Mr. Morgan's lack of contact with the child up to the time of trial. Ms. Monroe admitted she denied Mr. Morgan visitation with his son and rejected an offer of child support, yet this is a factor against Mr. Morgan. Next, the court considered the insufficiency of testimony about Mr. Morgan's ability to care for the child. This misplaces the burden and destroys the statutory presumption. It is true Mr. Morgan did not present a plethora of evidence about his child-care abilities, other than to testify he was to begin a child-care class later in the month, following the hearing and he had kept his nieces on numerous occasions. Mr. Morgan was not required to present evidence on this issue, the legislative intent and statutory presumption was there, in his favor. Thus, it became incumbent on Ms. Monroe to present evidence why the standard possession order was unworkable or inappropriate. Yet, she gave no specific evidence of lack of parenting skills by Mr. Morgan, she simply had reservations about standard visitation based upon her feeling that Mr. Morgan was not a responsible person. The majority very adeptly sets out Mr. Morgan's faults, as testified to by Ms. Monroe, in general terms. They must do so, because there are no specifics in the record. Ms. Monroe testifies that Mr. Morgan has a temper, but provides no specifics; she testifies that Mr. Morgan is a "quitter," but provides no specifics. There is absolutely nothing negative regarding Mr. Morgan's past history that touches on child-rearing, baby-sitting, or interaction with children. The evidence used to justify a non-standard order is, in my opinion, no evidence; thus it was an abuse of discretion for the trial court to deviate from the standard possession order.
Assuming, for the sake of argument, there was some evidence, more than a scintilla, to justify the deviation, the order entered was made without reference to any guiding principles. The order established visitation at one hour each first and third Monday, from 7:30 to 8:30 p.m., in the presence of the mother, until the child reached age three. There was no testimony when the child ate or slept or whether this time period would provide Mr. Morgan any opportunity to "parent." Then based solely upon the child's age, the possession ballooned eight fold; from one hour on Monday evenings to eight hours on Saturday's. Again, there was no evidence, other than the mother's wishes and the proposed settlement letter, that this amount was appropriate. Presumably, Mr. Morgan will have become slightly more responsible, but not up to standard, yet. Then, not as a result of anything but the calendar, at age six, the visitation will again balloon from eight hours in a weekend period to forty-eight hours and over two nights. Again, there has to be some presumptions about quantifying Mr. Morgan's responsibility, because there certainly was no evidence, even speculative, about what the circumstances would be at that time. Even under that speculation, Mr. Morgan is still deficient in some manner because the standard possession order is not in place; there are no holidays or summer visitation. If the trial judge had not "bought" Ms. Monroe's acceptable possession order, logic dictates he would have *865 "phased in" the various visitation schemes. For example, moving from one hour per week to three or four hours during age two. For example, moving to two days during a week-end, then two days and one night, rather than jumping from one day per week-end to two days and two nights. Based upon the facts of this case, I can only reach the conclusion that the possession order entered amounted to an abuse of discretion.
I also reach the conclusion that the failure to permit a bill of exception during the hearing on the motion for new trial and the failure to grant a new trial was an abuse of discretion. The general rule is that a trial court must permit a party to make an informal bill of exceptions. See 4M Linen and Uniform Supply Co. v. W.P. Ballard & Co., 793 S.W.2d 320, 324 (Tex.App.-Houston [1st Dist.] 1990, writ denied). "The obvious purpose behind a bill of exceptions is to put the evidence in the record so that the appellate court can determine if the trial court erred in excluding it or erred in ruling in some way materially related to the evidence." Gray v. Gray, 971 S.W.2d 212, 218 (Tex.App.-Beaumont 1998, no writ). The majority is correct when they cite Pennington v. Brock, 841 S.W.2d 127, 131 (Tex.App.-Houston [14th Dist.] 1992, no writ), for the proposition that when a record is sufficient to apprise both the trial court and the appellate court of the nature of the evidence expected to be elicited, any error in refusing to allow a bill of exceptions is harmless. See also Gray, 971 S.W.2d at 218. Mr. Morgan's counsel stated he wanted to present testimony from Mr. Morgan's aunt about Mr. Morgan babysitting her children. The majority has the gall to characterize this testimony as "cumulative of other evidence with respect to... his babysitting duties" when even the trial judge stated there was an insufficiency of testimony about Mr. Morgan's ability to care for the child. The majority goes to great lengths to discuss why the "newly discovered evidence" criteria should be adhered to in this case, pointing out the serious nature of the evidence in C. v. C., 534 S.W.2d 359, 362 (Tex.Civ.App.-Dallas 1976, writ dism'd w.o.j.). I believe the rule is even more relaxed in child custody and possession cases. Several cases have held that the ordinary rules restricting the granting of a new trial for newly discovered evidence should not be applied rigidly in child custody proceedings. In such cases the children are the primary parties in interest, and they are rarely represented by counsel. Counsel for the contending parents cannot always be relied upon to protect the interests of the children because the parents often attempt to promote their own interests and vindicate their own asserted rights rather than to protect the children's interests. See Anderson v. Martin, 257 S.W.2d 347, 353 (Tex.Civ.App.-Amarillo 1953, writ ref'd n.r.e.). Consequently, the court's duty to protect the children's interests should not be limited by technical rules. See Leithold v. Plass, 413 S.W.2d 698, 701 (Tex.1967); Brillhart v. Brillhart, 176 S.W.2d 229, 230 (Tex.Civ.App.-Amarillo 1943, writ ref'd w.o.m.). Pertinent facts which may directly affect the interests of the children should be heard and considered by the trial court regardless of the lack of diligence of the parties in their presentation of information to the court. Cf. Sparkman v. Sparkman, 217 Ala. 41, 114 So. 580, 581 (1927); Person v. Person, 172 La. 740, 135 So. 225, 227 (1931); W.E. Shipley, Annotation, Material Facts Existing at the Time of Rendition of Decree of Divorce but not Presented to Court, as Ground for Modification of Provision as to Custody of Child, 9 A.L.R.2d 623, 634 (1950). See Hefley v. Hefley, 859 S.W.2d 120, 124-125(Tex.App.-Tyler 1993, no writ).
I believe public policy mandates these rules be relaxed in child custody cases. A court should not, in such a case as this, refuse to consider the evidence on the ground that the party tendering it had not been diligent in presenting it. To permit the future of the children to be determined by lack of diligence of one of the parties *866 would ignore the court's primary responsibility to protect the children and make its decision in their best interests. I would sustain point of error number six and order a new trial on the issue of access allowed Mr. Morgan.
I also dissent to the overruling of point of error seven, regarding the surname of the child. In the context of preserving the father's surname, our highest court has stated, "[t]he courts have generally recognized that a protesting father has a protectable interest in having his child bear his surname, and they will exercise the power to change the name reluctantly and only where the substantial welfare of the child requires the change." Newman v. King, 433 S.W.2d 420, 423 (Tex.1968). In that same context, another court stated, "[b]y preserving the child's use of his legal name, the courts are protecting the relationship between the father and child and promoting the affiliation of the child with the father's family." Brown v. Carroll, 683 S.W.2d 61, 63 (Tex.App.-Tyler 1984, no writ)(citing Bennett v. Northcutt, 544 S.W.2d 703 (Tex.Civ.App.-Dallas 1976, no writ)).
I acknowledge this is the converse situation; a name change to the father's surname, but the same logic should apply. Furthermore, in a very pragmatic sense, it is more likely than not that this young mother will marry and thus the child will have neither his mother's nor his father's name,[8] but the name of his maternal grandparents.[9] To change the child's name to that of his father's, now at age three, seems, to me, to be the least confusing and in the child's best interest.[10] Therefore, I would hold the trial court abused its discretion in refusing to change the child's name.
In summary, this is a difficult case. It is never easy to say a trial judge abused his discretion in matters that are historically, legislatively and judicially reserved to a trial judge. However, I believe this is the situation here. The possession order here was not fashioned with the best interests of the child as the paramount concern nor does it establish a workable order that fosters the father-son relationship. This possession order was a capitulation to the desires of the mother and her counsel. As an appellate court, we have failed to correct an injustice. I can only hope the father and son develop the proper bonding and proper relationship despite two courts' attempt to thwart that goal.
NOTES
[1] The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).
[1] Mr. Morgan does not complain about this; it was moot by the time the appeal was heard.
[2] TEX. FAM.CODE ANN. § 153.312(a)(1) (Vernon Supp.2000).
[3] TEX. FAM.CODE ANN. § 153.251(b) (Vernon 1996).
[4] TEX. FAM.CODE ANN. § 153.252 (Vernon 1996).
[5] TEX. FAM.CODE ANN. § 153.253 (Vernon 1996).
[6] TEX. FAM.CODE ANN. § 153.254 (Vernon 1996).
[7] TEX. FAM.CODE ANN. § 153.256 (Vernon 1996).
[8] This scenario was presented to Ms. Monroe in a question by Mr. Morgan's attorney.
[9] This is not to minimize the love and support these grandparents have given the child.
[10] There was no expert evidence on this issue, on the "wishes" and opinions of the interested parties.