GINA M. PALAFOX, Justice
Appellant J.J.[1] filed a restricted appeal pro se challenging the trial court's post-answer default judgment in a suit affecting the parent-child relationship. In two issues, J.J. challenges orders pertaining to visitation rights and child support. Because no error is apparent from the face of the record, we affirm.
BACKGROUND
On February 20, 2015, pursuant to Texas Family Code Chapter 231, the Office of the Attorney General of Texas representing the State of Texas, filed a petition to establish the parent-child relationship of J.M.M., the child subject of the suit, who was then residing with her mother, M.M. See generally TEX. FAM. CODE ANN. Ch. 231 (West 2014). The State alleged the parents of the child were separated and that J.J. was the father. The State requested the *295 court appoint appropriate conservators for the child and issue child support orders.
On May 7, 2015, M.M. filed a counter-petition seeking appointment as a joint managing conservator of the child with the exclusive right to designate the child's primary residence, court-ordered child support, temporary orders, and attorney's fees, among other relief requested. On July 1, 2015, J.J. and M.M., by and through their attorneys of record, filed a pre-trial report identifying conservatorship, access and possession, and child support, among other issues that were contested in the case. J.J. later filed a first amended answer and counter-petition on November 23, 2015. In his counterpetition, J.J. acknowledged his paternity, and on that basis, asserted his standing to bring his own claims for relief. Among his requests, J.J. sought appointment as a joint managing conservator, a restriction on the child's residence to El Paso County, possession and access as per the standard possession order (SPO), and attorney's fees and other expenses. After a few months, J.J.'s attorney filed a motion to withdraw as counsel and the court granted the motion on April 15, 2016.
On May 4, 2016, the trial court held a final hearing in the suit affecting the parent-child relationship attended by M.M. and the State, who were both represented by their attorneys of record. J.J., however, failed to appear and did not respond when the bailiff called his name three times. At the hearing, M.M. testified in support of her claims for relief as follows: that she worked as a parole officer; that she provided support, health insurance, and full-time care of J.M.M.; that she and J.J. were parents of J.M.M.; and, that J.M.M. was eighteen months old at the time of the hearing. Additionally, she described that J.J. did not visit J.M.M. or attempt to have any contact with the child, and when he was represented by counsel, his attorney had requested that her attorney speak with her about terminating his parental rights. M.M. asked that she be named sole managing conservator of the child and that J.J.'s access be suspended until he presented himself to the court. She testified she believed both requests were appropriate and in J.M.M.'s best interests. She also requested child support payments and testified that J.J.'s subpoenaed records established his employment as a real estate agent earning over $73,000 per year who also received other significant commissions through his employment. M.M. testified that J.J. had not paid any child support since J.M.M.'s birth, that she was responsible for J.M.M.'s medical expenses, and that $1,200 per month in child support payments would be fair and reasonable and in J.M.M.'s best interests. In its default order rendered after the hearing, the trial court found that J.J. was duly notified of the hearing and did not appear. The trial court's order found that J.J. was the biological father of J.M.M. and established their parent-child relationship. After finding it was not in the best interest of the child to appoint both parents as joint managing conservators, the trial court appointed M.M. as managing conservator with the exclusive right to determine the child's primary residence without regard to geographic location, and appointed J.J. as a possessory conservator. For possession and access, the trial court ordered "no visitation." Regarding child support, the trial court found that J.J.'s net monthly resources were $6,870.70, and ordered J.J. to pay $1,200 in current child support each month, representing 17.5 percent of his monthly net resources, beginning May 1, 2016, and continuing each month thereafter until the earliest of one of the events specified in the order subject to other provisions. The trial court additionally found that retroactive child support should be ordered for the period between November 1, 2014 and April 30, 2016, and entered a *296 judgment against J.J. in the amount of $21,600, with interest at 6 percent per annum, and assigned said judgment in favor of the Office of the Attorney General, for collection and distribution according to law.
On May 16, 2016, J.J. timely filed this restricted appeal.
DISCUSSION
In two issues, J.J. contends that the trial court erred by (1) failing to "hear out critical evidence to determine visitation rights;" and (2) by failing to calculate the child support based on his tax returns. We construe these arguments as challenging the legal and factual sufficiency of the evidence in support of the visitation and child support orders included in the default judgment. See TEX.R.APP.P. 38.1(f).
Standard of Review
A direct attack on a judgment by restricted appeal must: (1) be brought within six months after the trial court signs the judgment; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error complained of must be apparent from the face of the record. TEX.R.APP. P. 26.1(c), 30; Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997) ; see In re C.A.G. , No. 04-12-00129-CV, 2012 WL 5451801, at *1 (Tex. App.-San Antonio Nov. 7, 2012, no pet.) (mem. op.). The parties do not dispute that J.J. satisfies the first three elements required of a restricted appeal. The disputed element is whether there is trial court error apparent from the face of the record.
WHETHER ERROR COMPLAINED OF IS APPARENT ON THE FACE OF THE RECORD
A. Visitation
In Issue One, J.J. challenges the court's determination of his visitation rights with J.M.M. More specifically, J.J. argues the court should consider awarding visitation rights for J.M.M., as he understands "the importance of having a father figure throughout the most important part of a child's life."
Visitation is evaluated against an abuse of discretion standard. Sandone v. Miller-Sandone , 116 S.W.3d 204, 205 (Tex. App.-El Paso 2003, no pet.). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007) ; Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004) ; In re C.J.H. , 79 S.W.3d 698, 702 (Tex. App.-Fort Worth 2002, no pet.). Where sufficiency review overlaps with an abuse of discretion standard, we engage in a two-pronged inquiry to determine: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. Giron v. Gonzalez , 247 S.W.3d 302, 306 (Tex. App.-El Paso 2007, no pet.). First, in considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. Sandone , 116 S.W.3d at 206. If any probative evidence supports the trial court's determination, it must be upheld on review. Id. Second, after the sufficiency review, we must then determine whether the trial court made a reasonable decision as required by the abuse of discretion standard. Giron, 247 S.W.3d at 306.
In a default proceeding pertaining to issues of conservatorship of a child, or the possession of or access to a child, the party seeking relief must prove up the *297 required allegations of the suit by a preponderance of the evidence. See Giron , 247 S.W.3d at 308 ; Agraz v. Carnley , 143 S.W.3d 547, 552, 554 (Tex. App.-Dallas 2004, no pet.) (conservatorship and child support must be supported by "some evidence" to not constitute error on the face of the record) (citing Considine v. Considine , 726 S.W.2d 253, 255 (Tex. App.-Austin 1987, no writ) ).
Texas Family Code Section 153.002 provides that the best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship, possession, and access to a child. TEX. FAM. CODE ANN. § 153.002 (West 2014) ; Acosta v. Soto , 394 S.W.3d 665, 667 (Tex. App.-El Paso 2012, no pet.). Expressly stated, the public policy of the State is to assure continuing contact between children and parents who have established the ability to act in their child's best interest, and are able to provide a safe, stable, and nonviolent environment for the child. TEX. FAM CODE ANN. § 153.001 (West 2014). A trial court has wide latitude in determining the best interests of the child, and its judgment will be reversed only when it appears from the record as a whole that the trial court has abused its discretion. In Interest of J.R. III , No. 05-14-00338-CV, 2015 WL 4639625, at *5 (Tex. App.-Dallas Aug. 5, 2015, no pet.) (quoting Jeffers v. Wallace, 615 S.W.2d 252, 253 (Tex.Civ.App.-Dallas 1981, no writ) (internal citation omitted) ); see also Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). Unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child. TEX. FAM. CODE ANN. § 153.131 (West 2014).
Following a conservatorship appointment, the Texas Family Code provides guidelines for trial judges to follow when determining the periods of possession for a possessory conservator. TEX. FAM. CODE ANN. § 153.192(b) (West 2014). The guidelines established in the standard possession order (SPO) are intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator. TEX. FAM. CODE ANN. § 153.251(a) (West 2014). However, the SPO is designed to apply to a child older than three years of age. Id. § 153.251(d). For a child less than three years of age, the trial court must render an order appropriate under the circumstances and shall consider evidence of all relevant factors including, inter alia , (1) the caregiving provided to the child before and during the current suit; (2) the effect on the child that may result from separation from either party; (3) the availability of the parties as caregivers and the willingness of the parties to personally care for the child; (4) the physical, medical, behavioral, and developmental needs of the child; (5) the physical, medical, emotional, economic, and social conditions of the parties; (6) the child's need to develop healthy attachments to both parents; (7) the child's need for continuity of routine; (8) the ability of the parties to share in the responsibilities, rights, and duties of parenting; and (9) any other evidence of the best interest of the child. TEX. FAM. CODE ANN. § 153.254(a) (West Supp. 2017). When a court concludes that access is not in the best interest of the child, Section 153.193 allows for either a denial of possession or a restriction or limitation on possession or access. TEX. FAM. CODE ANN. § 153.193 (West 2014).
*298 Here, after determining that joint managing conservatorship of the child was not in the best interest of the child, the trial court appointed M.M. as sole managing conservator and J.J. as possessory conservator. On appeal, J.J. does not challenge his appointment as a possessory conservator. Rather, in a single line of his brief, J.J. argues the reporters' record "indicates that no critical evidence was entered to determine no visitation rights." We construe J.J.'s argument as challenging the court's order on possession and access.
At the hearing M.M. testified, among other things, (1) that J.M.M. was eighteen months old at the time of the hearing; (2) that she (M.M.) took care of all of J.M.M.'s needs including providing her with health insurance; (3) that J.J. had not provided any support for the last 18 months; (4) that J.J. had not visited J.M.M. nor made any attempt to visit or contact her even after the initiation of the Attorney General suit to establish paternity; and (5) that J.J. made inquiry through his lawyer, at a time when he was represented, about terminating his parental rights. Because J.J. was not showing any interest or wanting to be part of J.M.M.'s life, M.M. requested she be named sole managing conservator and that the court suspend any access to the child until J.J. presented himself to the court and made a request accordingly. Finally, M.M. testified she believed her requests were appropriate and in J.M.M.'s best interest.
Viewing the record most favorable to the judgment, as we must, we find the evidence supports the trial court's suspension of periods of possession and access pending J.J. presenting himself to the court for an order appropriate to the circumstances and in the child's best interest. See In re T.J.S. , 71 S.W.3d 452, 460 (Tex. App.-Waco 2002, pet. denied) ; In re C.B.M. , 14 S.W.3d 855, 859 (Tex. App.-Beaumont 2000, no pet.). Section 153.254(a) of the Texas Family Code requires the court to consider relevant factors of the parties before rendering an order appropriate for possession of a child who is less than three. TEX. FAM. CODE ANN. § 153.254(a). Pursuant to requirements, the trial court must consider the caregiving provided to J.M.M. before and during the current suit; the effect on J.M.M. that may result from separation from either party; M.M.'s and J.J.'s availability and willingness to personally care for the child; M.M.'s and J.J.'s physical, medical, emotional, economic, and social conditions; J.M.M.'s need for continuity of routine; and, M.M. and J.J.'s ability to share in the responsibilities, rights, and duties of parenting, among other relevant factors. Id. Accordingly, the fact that the trial court's order amounted to a total denial of J.J.'s possession of or access to J.M.M. was permissible under the circumstances as there is some evidence in the record that it would be in J.M.M.'s best interests to suspend access and possession until he presented himself to the court. See In re Walters , 39 S.W.3d 280, 286 n.2 (Tex. App.-Texarkana 2001, no pet.) (a severe restriction or limitation on visitation, even one that amounts to a denial of access to a child, is still permissible if it is in the best interest of the child). Because we find sufficient evidence in the record supporting the trial court's determination of no visitation, we conclude the trial court did not abuse its discretion and error is not apparent from the face of the record.
J.J.'s first issue is overruled.
B. Child Support
In his second issue, J.J. contends that the trial court erred in not considering his tax returns in determining the amount of child support he was obligated to pay. We review a trial court's judgment *299 granting child support under the same abuse of discretion standard set out above. See Miles v. Peacock , 229 S.W.3d 384, 388-89 (Tex. App.-Houston [1st Dist.] 2007, no pet).
Current Child Support
Current child support is generally determined by calculating the child support obligor's monthly net resources and applying statutory guidelines to that amount. See TEX. FAM. CODE ANN. §§ 154.062(a), 154.125 (West Supp. 2017). In the case of one child, the Family Code sets the monthly amount of support an obligor must pay at 20 percent of the first $7,500 of the obligor's monthly net resources. Id. §§ 154.125(a), (b) ; 154.126(a). In applying the guidelines for an obligor who has a child in more than one household, the court shall apply the percentage of 17.5 percent, as set for in the table. Id. §§ 154.128(a), 154.129. "There must be some evidence of a substantive and probative character of net resources" in order for the trial court to discharge its duty to calculate monthly net resources. See Miles , 229 S.W.3d at 389 (quoting Newberry v. Bohn-Newberry , 146 S.W.3d 233, 236 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ).
Here, M.M. testified that J.J. is employed as a realtor, that J.J.'s commissions and records were subpoenaed and showed that he made in excess of $73,000 in 2014, and that amount is approximately what he makes regularly. In addition, M.M. testified that J.J. earned significant commissions including $20,000 for the period of January to March of 2015, and $17,000 from July through September of that same year. She also testified he had another child and that child support of $1,200 per month would be fair and reasonable and in the child's best interest.
Based on the uncontroverted evidence, the trial court found that J.J.'s gross monthly resources were $9,400 and his net resources were $6,870.70, and applied the percentage of 17.5 percent of his net resources for child support, such that the court ordered J.J. to pay $1,200 per month in current child support and $0 per month in cash medical support. We conclude that M.M.'s testimony constituted sufficient evidence for the trial court to calculate J.J.'s monthly net resources and impose the 17.5 percent monthly child support amount as permitted by Sections 154.128(a) and 154.129. See Miles , 229 S.W.3d at 389. Although M.M. did not testify as to an exact amount J.J. earned during this time period, but gave only an approximation of J.J.'s resources for the relevant time period from records she had obtained by subpoena, courts are allowed to calculate an obligor's net resources on "imprecise information." See In re J.C.K. , 143 S.W.3d 131, 139 (Tex. App.-Waco 2004, no pet.) ; see also Knight v. Knight , 131 S.W.3d 535, 541 (Tex. App.-El Paso 2004, no pet.) (when income and net resources vary from month to month, it may only be possible to ascertain a range of an obligor's net resources); see also Morales v. Rice , 388 S.W.3d 376, 381 (Tex. App.-El Paso 2012, no pet.) (a witness with personal knowledge of medical expenses may testify without providing documentation to substantiate the testimony).
Although J.J. complains that his tax returns were not considered in determining the amount of child support he was obligated to pay, he does not cite to any authority in his brief to support his argument. Moreover, M.M. provided evidence of J.J.'s employment and yearly income based on commissions and other records that were subpoened in the case. Because the trial court's award did not exceed that imposed by the guidelines set forth in Sections 154.128(a) and 154.129, there is no error from the face of the record with *300 regard to the trial court's imposition of current child support. See Newberry , 146 S.W.3d at 236 (obligor failed to show error from the face of the record where obligee testified about the obligor's approximate yearly income, and the trial court's award did not exceed that imposed by the guidelines).
Retroactive Child Support
A trial court may also impose retroactive child support by applying the child support guidelines and considering the net resources of the obligor during the relevant time period. See TEX. FAM. CODE ANN. §§ 154.009(b), 154.131(b) (West 2014). The trial court should consider whether (1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity; (2) the obligor had knowledge of his paternity or probable paternity; (3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and (4) the obligor has provided actual support or other necessaries before the filing of the action. Id. § 154.131(b). It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child. See id. § 154.131(c). This presumption may be rebutted by evidence that (1) the obligor knew or should have known that he was the father of the child for whom support is sought and (2) he sought to avoid the establishment of a support obligation for the child. Id. § 154.131(d)(1)-(2). The Family Code instructs the trial court to calculate net resources for the purposes of determining the child support liability. Id. § 154.062. Accordingly, there must be some evidence of a substantive and probative character of net resources in order for the court to discharge this duty. Newberry, 146 S.W.3d at 236.
Here, M.M. testified that J.J. made in excess of $73,000 in 2014, as well as commissions of almost $20,000 between January and March 2015, and $17,000 from July through September 2015, and that J.J. had not paid any child support for the entire eighteen months from J.M.M.'s birth to the date of trial. The trial court rendered judgment against J.J. in the amount of $21,600 for retroactive child support for the period of November 1, 2014 through April 30, 2016, as established by the child support guidelines previously discussed. Again, although this information is less than precise, we believe it is sufficient evidence to support the trial court's imposition of retroactive child support. See In re J.C.K. , 143 S.W.3d at 139 ; Ayala v. Ayala , 387 S.W.3d 721, 728 (Tex. App.-Houston [1st Dist.] 2011, no pet.) (trial court did not abuse its discretion in awarding $61,498 in retroactive child support when testimony established that the obligor's monthly income was $3,900, was employed at the same place and same capacity during the relevant time period, and had not paid child support in ten years). Because there is some evidence to support the trial court's award, we cannot say the trial court abused its discretion in awarding retroactive child support.
Thus, error is not apparent from the face of the record with regard to the trial court's imposition of retroactive child support either. Since error is not apparent from the face of the record, J.J.'s restricted appeal must fail for this reason as well.
J.J.'s second issue is overruled.
CONCLUSION
The trial court's order establishing the parent-child relationship and the imposition *301 of retroactive and current child support is affirmed.

To protect the identity of the child, we refer to Appellant, Appellee, and the child by their initials. See Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2017); Tex R. App. P. 9.9(a)(3).